**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SPENCER MAYHEW and ROSALIE NOREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CANDID COLOR SYSTEMS, INC., an Oklahoma corporation,<br><br>Defendant. | Case No. 5:24-CV-00814-JD<br><br>Hon. Judge Jodi W. Dishman |

**OPENING BRIEF IN SUPPORT OF DEFENDANT CANDID COLOR SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

## I. INTRODUCTION

This is the second forum in which Plaintiffs Spencer Mayhew and Rosalie Noren (collectively, "Plaintiffs") allege that Defendant Candid Color Systems, Inc. ("CCS") violated the Illinois Biometric Information Privacy Act (the "BIPA"). Plaintiffs previously filed a related case in the U.S. District Court for the Southern District of Illinois. The Southern District of Illinois rightly dismissed that action for lack of personal jurisdiction on August 5, 2024, and as a result did not reach CCS's arguments that Plaintiffs failed to state a claim. *See Mayhew v. Candid Color Sys., Inc.*, No. 3:23-CV-2964, 2024 WL 3650095, at *3 (S.D. Ill. Aug. 5, 2024). Plaintiffs refiled their Complaint in the U.S. District Court for the Western District of Oklahoma, but their new forum choice should yield the same result of dismissal. Plaintiffs still fail to state a claim, and for numerous reasons, this Court should dismiss the Complaint with prejudice under Rule 12(b)(1) and Rule 12(b)(6):

***First***, the Court should dismiss Plaintiffs' BIPA §§ 15(a) and 15(c) claims because Article III standing does not exist for those claims. Plaintiffs' Section 15(a) claim is premised solely on CCS's alleged failure to develop a publicly available biometric retention policy (not on CCS's alleged failure to comply with such a policy by retaining Plaintiffs' data for longer than permitted). Courts consistently hold that this type of § 15(a) claim does not allege a concrete injury-in-fact for standing purposes.

***Second***, the BIPA does not apply extraterritorially. The BIPA therefore could apply to CCS only if CCS's alleged BIPA-related conduct occurred primarily and substantially in Illinois. Plaintiffs fail to allege that CCS engaged in ***any*** conduct in Illinois giving rise

to BIPA liability. On the contrary, Plaintiffs allege only that Missouri-based non-party Kabance Photo Services, Inc. used CCS's online platform to sort photos it took of Plaintiffs.

***Third***, Plaintiffs' claims are barred under the BIPA's "government contractor" exception set forth in § 25(e) of the statute. Plaintiffs' Complaint, read in conjunction with documents incorporated therein and/or of which the Court can take judicial notice, establish that the relevant photographs were taken in connection with [i] a CCS customer's agreement to provide photography services at the May 13, 2023 Collinsville High School graduation ceremony and [ii] a CCS customer's agreement to provide photography services at the May 15, 2021 Blackburn College graduation ceremony. CCS's customer organized Plaintiffs' photos and made them available for sale online (as required under the respective agreements) using CCS's software product. Thus, CCS functioned as a "subcontractor" by providing its customer and the two respective schools with use of its software.

***Fourth***, Plaintiffs otherwise fail to allege claims under §§ 15(a)-(c) of the BIPA. Accordingly, Plaintiffs' complaint should be dismissed with prejudice.

## II. BACKGROUND

### A. The Illinois Biometric Information Privacy Act

In 2008, the Illinois General Assembly enacted the BIPA in response to the growing use of biometric technology in "financial transactions and security screenings" in Illinois. 740 ILCS 14/5(a). The BIPA imposes certain requirements for the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). The BIPA defines "biometric identifier" to mean "a

retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and defines "biometric information" to mean "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. For brevity, this brief refers to biometric identifiers and biometric information, individually and collectively, as "biometric data."

As relevant here, § 15(a) of the BIPA requires private entities "in possession of" biometric data to (1) "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric [data]" under which biometric data is destroyed "when the initial purpose for collecting or obtaining such [data] has been satisfied or within 3 years of the individual's last interaction with the [entity], whichever occurs first"; and (2) "comply with [their] established retention schedule[s] and destruction guidelines." 740 ILCS 14/15(a). Section 15(b) provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data unless it first obtains a "written release" from the subject or the subject's "legally authorized representative." 740 ILCS 14/15(b). And § 15(c) states that a "private entity in possession of" biometric data may not "sell, lease, trade, or otherwise profit from a person's" biometric data. 740 ILCS 14/15(c).

The BIPA's penalties are harsh. "Any person aggrieved" by a violation of the statute may sue for actual damages or liquidated damages of $1,000 per violation (for negligent violations) or $5,000 per violation (for "intentional[]" or "reckless[]" violations). 740 ILCS 14/20(1)-(2). The BIPA also allows prevailing parties to recover "reasonable attorneys'

fees and costs, including expert witness fees and other litigation expenses." 740 ILCS 14/20(3).

### B. The Parties

CCS is an Oklahoma-based photography business that provides its customers (*i.e.*, professional photographers) with various products and services, including software that photographers can use to upload, organize, and sell their photographs to their end-user customers.[1] *See, e.g.*, ECF No. 1, Compl. ¶¶ 10, 23; *id.* ¶ 4 ("[CCS] provides an online platform for the marketing and sale of photos taken at school graduation ceremonies and youth sporting events (among other types of events)."). Plaintiffs claim that CCS's platform uses "facial recognition technology," which "can identify facial images in a particular photograph and locate potentially matching facial images among other photographs in a gallery." *Id.* ¶ 5. Plaintiffs also claim that this technology is integrated into CCS's web-based "Ecommerce platform" product, and that the "facial recognition feature is made possible only through the collection of biometrics." *Id.* ¶¶ 22, 25.

Non-party Kabance Photo Services, Inc. ("Kabance") is a Missouri-based[2] photography business and CCS customer who uses the Ecommerce platform to market its

---

[1] For purposes of CCS's software products, CCS customers are photographers who use the software to operate their photography businesses. These professional photographers interact directly with end-user consumers (*i.e.*, individuals being photographed, along with their relatives, friends, etc. who may wish to purchase the photos). CCS interacts directly only with its professional-photographer customers – not end users. To avoid confusion, in this Motion the term "customer" refers to a professional photographer who has used CCS's software, and the term "end user" refers to an individual who has been photographed by a CCS customer (or a consumer who has purchased photos taken by a CCS customer).

[2] *See* Missouri Secretary of State, *Search for a Business Entity – Search Results for KABANCE PHOTO SERVICES, INC.*, https://bsd.sos.mo.gov/BusinessEntity/

business to schools regarding events (*e.g.*, graduation ceremonies) at which schools may wish to hire a professional photographer(s). *Id.* ¶¶ 4-5, 35, 37, 48.

Mr. Mayhew and Ms. Noren are Illinois residents who claim they were photographed "by photographers working on behalf of Kabance" in May 2023 and May 2021, respectively, and that their images were then uploaded to the Ecommerce platform. *See id.* ¶¶ 8-9, 37, 48.

### C. Plaintiffs' Allegations

Mr. Mayhew claims that "photographers working on behalf of Kabance, as part of the Grad Photo Network" (for which CCS allegedly owns the trademark), photographed him during his graduation from Collinsville High School. *See* Compl. ¶¶ 33, 36-37. Kabance then uploaded the photos to the Grad Photo Network website and later emailed Mr. Mayhew's mother a link through which she could view and purchase his graduation photos. *See id.* ¶¶ 37, 42-43. (Mr. Mayhew's allegations do not explain how the photographers obtained his mother's name and email address.) According to Mr. Mayhew, when viewing the photos on the Grad Photo Network website, a "dotted-line rectangular field automatically appears around [his] face." *Id.* ¶ 38. Mr. Mayhew alleges that the appearance of this "rectangular field" around his face indicates that CCS's Ecommerce platform "extracted [his] faceprint" and "therefore collected [his] biometrics." *Id.* ¶ 41. Ms. Noren similarly claims that "photographers working on behalf of Kabance, as part of

---

BusinessEntityDetail.aspx?page=beSearch&ID=347955 (last accessed Sept. 15, 2024) (screenshot attached hereto as **Exhibit A**). The Court can take judicial notice of this fact in ruling on CCS's Motion. *See* Fed. R. Evid. 201(b).

the Grad Photo Network," photographed her during her graduation from Blackburn College, uploaded the photos to the Grad Photo Network website, and later emailed her "soliciting her to purchase the photos." *See id.* ¶¶ 47-48, 53. (Ms. Noren's allegations do not explain how the photographers obtained her name and email address.) Like Mr. Mayhew, Ms. Noren alleges that the photos on the Grad Photo Network website depict a "dotted-line rectangular field . . . around [her] face," allegedly indicating that the Ecommerce platform "extracted [her] faceprint" and "therefore collected [her] biometrics." *Id.* ¶¶ 49, 52.

Based on these allegations, Plaintiffs allege that CCS violated the BIPA by: [i] failing to develop a public retention schedule regarding the storage of biometric data, in alleged violation of § 15(a) of the BIPA, *e.g.*, *id.* ¶ 83; [ii] collecting Plaintiffs' biometric data without providing the requisite notice and obtaining their written consent, in alleged violation of § 15(b) of the BIPA, *e.g.*, *id.* ¶¶ 91, 99, 107; and [iii] "profit[ing] from the biometrics of Plaintiffs and the Class members by using [the biometrics] to facilitate the sale of photographs," in alleged violation of § 15(c) of the BIPA, *e.g.*, *id.* ¶¶ 114-15.

**D. CCS's Ecommerce Platform**

The Complaint refers to CCS's web-based software product that includes a customizable "Ecommerce" platform used by professional photographers. *See, e.g.*, Compl. ¶ 22 (alleging that CCS offers "a web-based 'Ecommerce platform' that includes features designed to be used by photographers from an onsite computer or mobile device"). CCS customers can configure the Ecommerce platform to fit their specific needs, including by changing the appearance and functionality of the consumer-facing webpages associated

with their Ecommerce accounts; creating personal, team, class, and/or event galleries; and electing to use one or more optional software features. *See, e.g.*, *id.* ¶ 21 (alleging that CCS "connect[s] photographers with innovative products and workflow solutions that increase sales, and improve overall efficiency" and that CCS "ha[s] the tools to help [photographers] effectively market and sell images from events both small and large"). As reflected in the Complaint, CCS customers (rather than CCS) control the photos that CCS customers elect to take and upload to the Ecommerce platform (including the location in which any end users are photographed), and any decision as to the method customers use to sort photos uploaded to their Ecommerce accounts are made by the customers. *See id.* ¶ 24.

To organize, manage, and sell their photos using the Ecommerce platform, customers first upload their images to their respective Ecommerce accounts. *See id.* ¶¶ 30-31, 37, 48. Once the images are uploaded, customers can sort the photos and make them available online for viewing and purchase by end users. *See id.* ¶¶ 37, 48. Sorting photos in this way allows photographers to present online galleries to end users containing the photo(s) of the individual in which they are interested. *See id.* Customers have been able to elect to use an optional "facial recognition feature" to sort and organize their photos. *Id.* ¶ 23. This is one of many tools that customers have been able to utilize through the Ecommerce platform. *See id.* ¶ 21.

The Complaint reflects that Mr. Mayhew was photographed four times during the May 13, 2023 graduation ceremony held at Collinsville High School in Collinsville,

Illinois. *Id.* ¶ 37.[3] The Complaint further reflects that a photographer affiliated with Kabance – a photography business based in St. Louis, Missouri – took the four photos of Mr. Mayhew and uploaded them to Kabance's Ecommerce account. *Id.*; *see also* Ex. B (header of webpage containing proofs of photos: "KABANCE Photo Services, Inc., 5015 Hampton Ave., St. Louis MO 63109").

In addition, the Complaint reflects that Ms. Noren was photographed six times during the May 15, 2021 graduation ceremony held at Blackburn College in Carlinville, Illinois. Compl. ¶ 48.[4] The Complaint further reflects that a photographer affiliated with Missouri-based Kabance took the six photos of Ms. Noren and uploaded them to Kabance's Ecommerce account. *Id.*; *see also* Ex. C.

## III. ARGUMENT

### A. THE COURT SHOULD DISMISS PLAINTIFFS' §§ 15(a) AND 15(c)

---

[3] The four photographs of Mr. Mayhew appear in the screenshot attached hereto as **Exhibit B**. The Court can consider this document in ruling on CCS's Rule 12(b)(6) motion to dismiss for failure to state a claim because Plaintiffs' Complaint repeatedly refers to the photographs of Mr. Mayhew by describing how, when, and where they were taken, how they were uploaded to the Ecommerce platform, and how they appeared when viewed online. *See, e.g.*, Compl. ¶¶ 36-39. The Complaint also identifies the URL at which they can be viewed. *See id.* ¶ 37. Thus, under the incorporation-by-reference doctrine, the Court may consider the photos as depicted in Exhibit B in ruling on CCS's Motion. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.* ("*McGoveran II*"), 2021 WL 4502089, at *4 n.3 (D. Del. Sept. 30, 2021) (where plaintiffs' complaint "cite[d] the AWS website multiple times," court could consider relevant documents depicted on that website).

[4] The six photographs of Ms. Noren appear in the screenshot attached hereto as **Exhibit C**. The Court can consider this document in ruling on CCS's Rule 12(b)(6) motion to dismiss for the same reasons stated in footnote 3 above.

**CLAIMS UNDER RULE 12(b)(1)**

**1. Legal Standard**

To have standing under Article III of the U.S. Constitution, Plaintiffs must allege that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet the first requirement, they must allege that they have suffered a "concrete – that is, real, and not abstract" injury that has a "close historical or common-law analogue" "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (internal quotation marks omitted). Plaintiffs must also establish that their alleged injury is "actual or imminent," meaning the "threatened injury must be *certainly impending*." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (citation omitted).

Courts have specifically discussed standing in the context of claims brought under §§ 15(a) and 15(c) of the BIPA. Regarding § 15(a), the Seventh Circuit has held that when plaintiffs allege only that a company failed to develop and publish a written retention policy (*i.e.*, a violation of "prong (1)" of § 15(a)), they fail to allege a concrete injury-in-fact. *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020), *as amended*, 2020 WL 6534581, at *1 (7th Cir. June 30, 2020). The statutory duty to develop and make available a written policy "is owed to the public generally, not to particular persons whose biometric information the entity collects." *Id.* Thus, failing to follow § 15(a)'s written-policy requirement does not injure individual plaintiffs in "a concrete and particularized"

way. *Id.* On the other hand, the Seventh Circuit has held that when plaintiffs allege that a company retained their biometric data for longer than § 15(a) permits (*i.e.*, a violation of "prong (2)" of Section 15(a)), they have standing. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154-55 (7th Cir. 2020). Thus, where plaintiffs allege that a defendant has violated prongs (1) ***and*** (2) of § 15(a), standing exists; but where, as here, plaintiffs allege that a defendant violated only prong (1), then standing does not exist.

Regarding § 15(c), the Seventh Circuit has explained that the statutory provision creates a "general rule that prohibits the operation of a market in biometric identifiers and information," *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241 (7th Cir. 2021), and that absent "allegations of concrete and particularized harm to the plaintiffs," a claim that a company violated § 15(c) is insufficient to establish Article III standing. *See Halim v. Charlotte Tilbury Beauty, Inc.*, No. 23-CV-0094, 2023 WL 3388898, at *9 (N.D. Ill. May 11, 2023). The Seventh Circuit noted that standing ***might*** exist for a § 15(c) claim if a plaintiff plausibly alleged that he "suffered a particularized injury resulting from the operation of such a market [in biometric data]," *Kashkeesh v. Microsoft Corp.*, No. 21-CV-3229, 2022 WL 2340876, at *3 (N.D. Ill. June 29, 2022) (citing *Thornley*, 984 F.3d at 1247) – for example, by asserting "that by selling her data, the collector has deprived her of the opportunity to profit from her biometric information;" "that the act of selling her data amplified the invasion of her privacy that occurred when the data was first collected, by disseminating it to some unspecified number of other people;" or "that the scraping of data from social media sites raises the cost of using those sites in some respect." *Halim*, 2023 WL 3388898, at *8-9.

### 2. Standing Does Not Exist Regarding Plaintiffs' § 15(a) Claim

Here, Article III standing is lacking for Plaintiffs' § 15(a) claim because it is premised solely on CCS's alleged failure to comply with prong (1) of § 15(a). Plaintiffs therefore allege a § 15(a) violation akin to the claim asserted by the plaintiff in *Bryant* by claiming only that CCS "did not make data-retention and data-destruction policies publicly available" – ***not*** that CCS "violat[ed] the full range of its [S]ection 15(a) duties by failing to develop, publicly disclose, *and comply with* a data-retention schedule." *Fox*, 980 F.3d at 1154. The Complaint emphasizes that Plaintiffs' § 15(a) claim is based on CCS purportedly failing to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric [data] when the initial purpose for collecting or obtaining such [data] has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." Compl. ¶ 79 (quoting 740 ILCS 14/15(a)). Indeed, in the same Paragraph in which Plaintiffs claim that CCS "violated ***all three prongs*** of BIPA Section 15(b)" they claim only that CCS violated "prong (1)" of § 15(a) by "failing to provide a publicly-available written policy regarding its schedule and guidelines for retaining and permanently destroying biometrics." *Id.* ¶ 20 (emphasis added). The Court should thus dismiss Plaintiffs' § 15(a) claim because they allege no "particularized harm from" CCS's alleged failure to maintain a public retention policy, given that "'the duty to disclose' a written policy under Section 15(a) 'is owed to the public generally, not to particular persons whose biometric information the entity collects.'" *Zellmer v. Facebook, Inc.*, 2022 WL 16924098, at *3 (N.D. Cal. Nov. 14, 2022)

(citation omitted). Accordingly, the Court should dismiss Plaintiffs' § 15(a) claim for lack of standing under Rule 12(b)(1).

**3. Standing Does Not Exist Regarding Plaintiffs' § 15(c) Claim**

Plaintiffs' § 15(c) claim suffers from the same defect as the § 15(c) claim asserted in *Thornley*. Plaintiffs claim only that CCS "profited" by incorporating a "facial recognition feature" into its photography software, which software used Plaintiffs' purported biometrics "to facilitate the sale of photographs through the Grad Photo Network Website." Compl. ¶¶ 25, 68. That is, Plaintiffs claim that CCS's "biometric" feature made it easier for its photographer-customers to sell their photos to end users. Courts consistently find Article III standing lacking under these circumstances, where a company is alleged only to have used a purportedly "biometric" feature to "competitively position its . . . software in the marketplace, compete with other software applications, and thereby profit." *Hazlitt v. Apple, Inc.*, 543 F. Supp. 3d 643, 651 (S.D. Ill. June 14, 2021) (no standing for § 15(c) claim where plaintiffs did not allege that defendant "sold or otherwise profited from their <u>individual</u> biometric data"); *see also Daichendt v. CVS Pharmacy, Inc.*, No. 22-CV-3318, 2022 WL 17404488, at *3-4 (N.D. Ill. Dec. 2, 2022), *modified on reconsideration*, No. 22-CV-3318, 2023 WL 3579082 (N.D. Ill. Feb. 3, 2023) (no Article III standing for § 15(c) claim where plaintiffs "do not allege that defendant profited from their individual biometric data" but only "that defendant's conduct violates § 15(c) because it generally advertised the photo system, with its alleged use of biometric information, in order to generally profit from passport photos").

Plaintiffs do not (and cannot) allege that CCS injured them in any discernable way by, for example, depriving them "of the opportunity to profit from [their] biometric information" or "that the act of selling [their] data amplified the invasion of [their] privacy that occurred when the data was first collected." *Thornley*, 984 F.3d at 1247. Accordingly, the Court should dismiss Count V of the Complaint because Plaintiffs lack Article III standing to assert their § 15(c) claim. *See Gorgas v. Amazon.com, Inc.*, No. 22-CV-5159, 2023 U.S. Dist. LEXIS 109563, at * 5 (N.D. Ill. June 23, 2023) (dismissing § 15(c) claim where plaintiffs' "allegations provide some factual detail about how Amazon uses the biometric data to generate a profit – namely, that it uses the data to improve a technology that it sells" but "nothing in these allegations articulates how [plaintiffs] have suffered a personal, individual harm resulting from the commercial transaction benefiting Amazon").[5]

### B. The Court Should Dismiss Plaintiffs' BIPA Claims Under Rule 12(b)(6) For Failure To State A Claim

#### 1. Legal Standard

Rule 12(b)(6) requires dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To plead a viable cause of action, the allegations must transcend the "speculative," "conceivable," and "possible," and must "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 566-67, 570 (2007). The Court must disregard "legal conclusions" and "conclusory

[5] Even if standing existed for Plaintiffs' §§ 15(a) and 15(c) claims, the claims would still be subject to dismissal under Rule 12(b)(6) for the reasons stated in Part III.B.4 below.

statements," and scrutinize factual allegations to ensure they are more than "merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009).

### 2. Plaintiffs' BIPA Claims Violate The Extraterritoriality Doctrine Because Plaintiffs Do Not Allege That CCS's Relevant Conduct Occurred "Primarily And Substantially" In Illinois

For similar reasons that the Southern District of Illinois correctly held that it lacked personal jurisdiction over CCS under the facts alleged, the Complaint should be dismissed under Illinois's extraterritoriality doctrine. The BIPA was not "intended to have extraterritorial effect," *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017), and therefore "asserted violations … must have taken place in Illinois" to fall within the statute. *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100, 1104 (N.D. Ill. 2017). CCS could be subject to the BIPA only if "the majority of circumstances relating to the alleged violation[s]" occurred in Illinois. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008); *see Avery v. State Farm*, 835 N.E.2d 801, 853 (Ill. 2005) ("the circumstances relating to the claim [must have] occur[ed] primarily and substantially" in Illinois).

Plaintiffs' BIPA claims fail because Plaintiffs have not alleged, and cannot allege, that CCS engaged in ***any*** conduct in Illinois. There is no dispute that "BIPA violations must occur in Illinois in order for plaintiffs to obtain any relief." *McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021); *see also Rivera*, 238 F. Supp. 3d at 1100 ("If the Act cannot apply extraterritorially, then . . . asserted violations of the Act must have taken place in Illinois in order for them to win."). And under Illinois extraterritoriality principles, BIPA violations only occur in Illinois where the relevant

circumstances "occur[ed] primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 854. Here, Plaintiffs have not identified ***any*** conduct by CCS in Illinois, much less any misconduct implicating the BIPA. The reason is obvious: Plaintiffs ***cannot*** plausibly make such allegations given that the photographs were taken by Kabance (not CCS), are owned by Kabance (not CCS), and were uploaded to the Ecommerce platform by Kabance (not CCS).

Plaintiffs instead point repeatedly to their own conduct in Illinois or to conduct of a third party (*i.e.*, Kabance) to try to show an Illinois connection, but that cannot remedy their extraterritoriality problem. Plaintiffs allege that they are residents of Illinois. Compl. ¶¶ 8-9. But a "plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." *McGoveran II*, 2021 WL 4502089, at *4 (collecting cases). Plaintiffs further allege that their photos were taken while they were in Illinois. Compl. ¶¶ 36-37, 47-48. These allegations – that Plaintiffs are Illinois residents who were photographed at graduation ceremonies in Illinois – are the ***only*** Illinois-specific factual allegations regarding the conduct underlying their BIPA claims. Plaintiffs do not (and cannot) allege that their photographs were uploaded to the Ecommerce Platform from Illinois, or that any other part of the relevant process took place in Illinois.

Plaintiffs being photographed at Illinois ceremonies is unilateral conduct by Plaintiffs in Illinois. CCS is at least two steps removed from that conduct: (1) it was Missouri-based Kabance who photographed Plaintiffs at their respective graduation ceremonies, *see id.* ¶¶ 37, 48; and (2) it was Missouri-based Kabance who uploaded the

photos and used the "facial recognition" tool to sort them (presumably from Missouri). *See id.* Such attenuated conduct does nothing to show alleged misconduct by CCS occurring primarily and substantially in Illinois. This is ultimately why Plaintiffs' claims against CCS were dismissed for lack of personal jurisdiction, and this Court should dismiss the claims for similar reasons for violating the extraterritoriality doctrine.

Cases dismissing BIPA claims for lack of specific personal jurisdiction under the U.S. Constitution further illustrate Plaintiffs' extraterritoriality problem here. It is difficult, if not impossible, to pass the ***more*** exacting extraterritoriality test (demanding that conduct take place "primarily and substantially" in Illinois, *Avery*, 835 N.E.2d at 853) but fail the lesser test for personal jurisdiction (demanding only some suit-related activities that were "purposefully directed" at the forum state by the defendant, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)); *see also McGoveran*, 2021 WL 4502089, at *5 (recognizing how an earlier dismissal for lack of personal jurisdiction by the Southern District of Illinois "underscores the weak connection between [p]laintiffs' allegations and Illinois"). And so, cases dismissing BIPA claims for lack of specific personal jurisdiction further support dismissal based on extraterritoriality here. *See, e.g.*, *Gutierrez v. Wemagine.AI LLP*, No. 21-CV-5702, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022) (dismissing where the only Illinois contact was the unilateral choice of 50,000 Illinois users to sign up for a Canadian company's application with biometric features); *Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339, 344, 346 (N.D. Ill. 2021) (dismissing where New York-based Clarifai allegedly acquired photographs through a "Chicago-based venture capital fund, and its principals," because the jurisdictional test, like the extraterritoriality test, demands

that "contacts with Illinois must come from [defendant's] suit-related activity in the forum state, not from the activity of a third party"); *Redd v. Amazon Web Services, Inc.*, No. 22-CV-6779, 2023 WL 3505264, at *3 (N.D. Ill. May 17, 2023) (dismissing where "[a]side from registering to do business in Illinois, the only alleged link between AWS and Illinois runs through [third party] Wonolo," which allegedly used Amazon's Rekognition product in its own App).

Finally, to the extent Plaintiffs contend that resolution of the extraterritoriality issue is premature at the motion to dismiss stage, they are incorrect. Dismissal is appropriate on extraterritoriality grounds where Plaintiffs fail to plead the requisite facts. *See Shaw v. Hyatt Int'l Corp.*, 2005 WL 3088438, at *2 (N.D. Ill. Nov. 15, 2005), *aff'd*, 461 F.3d 899 (7th Cir. 2006) (dismissing claims based on extraterritoriality at Rule 12(b)(6) stage where "allegations have virtually no connection to Illinois"). This case is distinguishable from those where courts have treated extraterritoriality as an inherently factual question that is better suited for resolution at a later stage because the alleged Illinois conduct in those cases was not unilateral conduct by the plaintiffs many steps removed from the defendant. *See, e.g.*, *Rivera*, 238 F. Supp. 3d at 1100 (requiring discovery to resolve extraterritoriality question where plaintiffs alleged that Google scanned photos uploaded to Google Photos from devices in Illinois).

Plaintiffs seek to extend the BIPA well beyond its geographic boundaries. As Plaintiffs would have it, a company headquartered in Oklahoma (CCS) can be held liable under an Illinois statute (the BIPA) for providing an online photography platform from Oklahoma based on photos being uploaded to the platform by a Missouri company

(Kabance), simply because the (non-biometric) photos happen to include images of Illinois residents (Plaintiffs). That position plainly violates Illinois's prohibition against the extraterritorial application of its laws. Hence, this Court should dismiss Plaintiffs' Complaint.

Plaintiffs' claims fail this test. As explained, CCS's alleged relevant conduct has no direct link to, and is several steps removed from, Illinois. Plaintiffs' Illinois residence alone does not suffice. *See McGoveran II*, 2021 WL 4502089, at *4. In short, Plaintiffs do not allege that CCS's conduct occurred "primarily and substantially" in Illinois, nor do they have a good faith basis to do so. *See Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091-92 (N.D. Ill. 2019) (dismissing BIPA complaint with leave to amend where court was "unable to reasonably infer from the complaint that [plaintiff's] fingerprint was collected in Illinois"). Thus, the BIPA simply does not apply. *See Vance v. Amazon.com*, No. 20-CV-1084, 2022 WL 12306231, at *6-8 (W.D. Wash. Oct. 17, 2022) (dismissing BIPA claims on extraterritoriality grounds). For these reasons, the Court should dismiss the Complaint in its entirety under Rule 12(b)(6).

### 3. Plaintiffs' Claims Also Are Barred By The BIPA's "Government Contractor" Exception

Plaintiffs' claims also fail for a separate and independent reason – namely, they are barred by the BIPA's "government contractor" exception. *See* 740 ILCS 14/25(e) ("Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government."). The Illinois Appellate Court has stated that "an entity is exempt under

[S]ection 25(e) if it is (1) a contractor [or in this case, a subcontractor] (2) of a unit of government and (3) was working for that unit of government at the time it collected or disseminated biometric information." *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U, ¶ 19, *appeal denied*, 201 N.E.3d 582 (Ill. 2023).

Each prong is easily satisfied, as [i] Mr. Mayhew's BIPA claims involve photographs taken by CCS customer Kabance during his May 13, 2023 graduation ceremony at Collinsville High School, Compl. ¶ 37; [ii] Collinsville High School is a public high school within Collinsville Community Unit School District 10;[6] and [iii] Kabance was working for Collinsville Community Unit School District 10 when Kabance took photos of Mr. Mayhew, sorted them using CCS's software, and made them available for purchase online using CCS's software. In other words, CCS functioned as a "subcontractor" by providing Kabance with use of the software, and government subcontractors are expressly covered by § 25(e).

Regarding the first prong, Kabance qualifies as a "contractor" of Collinsville Community Unit School District 10. The Illinois Appellate Court broadly interpreted the term "contractor" in *Enriquez*. *See Enriquez*, 2022 IL App (1st) 211414-U, ¶ 20 ("[T]he [BIPA] itself does not define 'contractor,' so we must apply its ordinary meaning. Black's Law Dictionary (11th ed. 2019) defines 'contractor' as '1. A party to a contract. 2. More specif., one who contracts to do work for or supply goods to another; esp., a person or

---

[6] *See* Collinsville Kahoks – Collinsville Community Unit School District 10, *Collinsville High School*, https://www.kahoks.org/schools/collinsville-high-school/ (last accessed Sept. 15, 2024).

company that agrees to do work or provide goods for another company."). Here, Collinsville High School and Kabance agreed that Kabance would provide photography services at the May 13, 2023 graduation ceremony and make the photos available online for viewing and purchase. *See* Decl. of Cate Nash ¶ 5 (attached hereto as **Exhibit D**); Nash Decl. Ex. 1 (2023 Commencement Agreement Between Collinsville High School and Kabance obtained via FOIA request);[7] *see also* Collinsville Kahoks – Collinsville Community Unit School District 10, *Celebrating the Class of 2021*, https://www.kahoks.org/headlines/celebrating-the-class-of-2021/ (last accessed Sept. 15, 2024) ("**Pictures** will be provided to graduates by Kabance Photo Service courtesy of CHS and Unit #10.").

Moreover, CCS qualifies as a "subcontractor" under § 25(e) of the BIPA. A "subcontractor" is a business that undertakes to perform part or all of the obligations of another's contract. *See* Black's Law Dictionary (11th ed. 2019) ("subcontractor": "Someone who is awarded a portion of an existing contract by a contractor, esp. a general contractor"). Regardless of whether CCS has had a direct relationship with Collinsville High School, CCS has contracted directly with Kabance (the direct government contractor) in providing it with use of the Ecommerce platform, which Kabance needed to perform ***its*** contractual obligations owed to Collinsville High School – *i.e.*, to photograph graduates and make the photos available online for viewing and purchase.

---

[7] The Court can take judicial notice of this publicly available government contract obtained via FOIA request in considering CCS's Motion to Dismiss. *See* Fed. R. Evid. 201(b).

Regarding the second prong, Collinsville High School is clearly an "agent of a State agency or local unit of government." 740 ILCS 14/25(e); *see, e.g.*, 30 ILCS 805/3(a) ("'Local government' means a municipality, county, township, other unit of local government, ***school district***, or community college district.") (emphasis added); *Bd. of Ed. of Dist. No. 88, Cook Cnty. v. Home Real Est. Imp. Corp.*, 38 N.E.2d 17, 20 (Ill. 1941) ("School districts are quasi municipal corporations.").

Regarding the third prong, Kabance (and by extension, CCS) worked for Collinsville High School "at the time [it] collected . . . biometric information." *Enriquez*, 2022 IL App (1st) 211414-U, ¶ 19 (affirming dismissal of BIPA complaint brought against company that contracted with governmental entity that owns Navy Pier in Chicago); *id.* ¶ 23 ("The phrase 'contractor working for a local unit of government' refers to a contractor in some type of employment or services relationship . . . with that unit of government.'"). Kabance promised to photograph Collinsville High School graduates, organize the photos, and make them available online for viewing and purchase. *See* Nash Decl. Ex. 1. Kabance relied on CCS's platform at each step of this process – meaning both Kabance (as a contractor) and CCS (as a subcontractor) were working for Collinsville High School at the time Mr. Mayhew's purported "biometric data" was collected, possessed, stored, and/or "profited from." The Court should therefore dismiss Plaintiffs' Complaint with prejudice under Rule 12(b)(6).[8]

---

[8] Ms. Noren's claims also are barred by the "government contractor" exception, despite her photos having been taken during her graduation from Blackburn College, a "private institution." *See* Compl. ¶ 47. Illinois courts acknowledge that even private entities can constitute local public entities in certain circumstances. *See, e.g.*, *Better Government Ass'n*

### 4. Plaintiffs Otherwise Fail To Allege Viable Claims Under §§ 15(a)-(c)

#### a. Plaintiffs Allege No Facts Showing That CCS "Possessed" Plaintiffs' Biometric Data

Even if the Court has subject-matter jurisdiction with respect to Plaintiffs' § 15(a) and § 15(c) claims (it does not, as stated in Part III.A), the Court should dismiss the claims under Rule 12(b)(6). Sections 15(a) and 15(c) apply only to private entities "in possession" of biometrics. 740 ILCS 14/15(a), (c). The Illinois Supreme Court has found that "possession," as ordinarily understood, "occurs when a person has or takes control of the subject property or holds the property at his or her disposal." *People v. Ward*, 215 Ill. 2d 317, 325 (2005). Thus, to trigger the BIPA's "possession" requirements, a defendant must "take control" of biometric data or "hold" that data "at his or her disposal." *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶¶ 1, 39-43, 57-58 (affirming trial court's dismissal of BIPA action where plaintiffs failed to allege that Apple collected or possessed their biometrics by asserting only that "Apple designed and owns the software that plaintiffs opted to use").

Here, Plaintiffs do not allege that CCS controlled or even knew about the data (including photos of them) that was allegedly uploaded to the Ecommerce platform. Nor could they, as the Complaint demonstrates that CCS-customer photographers (not CCS)

---

*v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 32 (noting private company can be local public entity for purposes of Tort Immunity Act if it is "organized for the purpose of conducting public business" and it "remains subject to 'operational control by a unit of local government'") (citations omitted); *see also Doe v. Blackburn Coll.*, No. 06-CV-3205, 2007 WL 647324, at *1 (C.D. Ill. Feb. 27, 2007) (acknowledging that immunity under Illinois School Code can apply to private institutions, including Blackburn College).

own and control the photos (and any data derived therefore) they have taken and uploaded to their Ecommerce accounts. *See, e.g.*, Compl. ¶¶ 23 (noting CCS's "photographer clients" can use the Ecommerce platform to organize and sell "their images" to end users). Nothing in the Complaint suggests CCS knew about these "photographer clients" uploading photos of Plaintiffs to the clients' Ecommerce accounts, or that CCS exercised, or could have exercised, any control over the data. *See Stauffer v. Sky Zone Franchise Group*, No. 19-L-311, July 22, 2022 Order at 3-4 (Cir. Ct. St. Clair Cty., Ill.) (dismissing § 15(a) claim brought against franchisor-defendant Sky Zone where plaintiff "has not alleged sufficient facts … to allege possession of … biometric data" and noting § 15(a) does not apply to entities that "have no interaction" with plaintiff; "Sky Zone would not know when the initial purpose for collecting the information has been satisfied, and 3 years after the last interaction with Sky Zone would never occur") (attached hereto as **Exhibit E**). In short, it defies common sense – and the text of the BIPA – to say that CCS "possessed" Plaintiffs' data when it was subject to customers' exclusive "dominion and control" at all times. *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 962, 968-69 (N.D. Ill. 2020) (dismissing § 15(a) claim against defendant who allegedly "stored" biometric data on behalf of other party because allegations of mere storage did not amount to "form of control" or show that defendant "could freely access the data").[9]

---

[9] The court in *Heard* later allowed plaintiff's § 15(a) claim to survive a second motion to dismiss. *See Heard*, 524 F. Supp. 3d 840. But the court did so only after plaintiff amended the complaint to add plausible allegations that defendant "exercise[d] some form of control" over plaintiff's data. Plaintiffs' Complaint includes no such allegations.

**b. Plaintiffs Allege No Facts Showing That CCS "Collected" Plaintiffs' Biometric Data**

Unlike §§ 15(a) and 15(c), which apply to the "possession" of biometric data, only affirmative ***actions*** trigger § 15(b): the private entity must "collect, capture, purchase, receive through trade," or "obtain" biometric information. 740 ILCS 14/15; *see, e.g.*, *Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507, at *4 (S.D. Ill. Aug. 5, 2022) ("To recognize and honor this intentional distinction in the language used by the Illinois legislature in different sections of BIPA ('collection' vs. 'possession'), district courts from within the Seventh Circuit . . . have concluded that in order for § 15(b) to apply, the defendant must take an *active step* to collect, capture, or otherwise obtain the plaintiff's biometric information.") (emphasis in original).

Section 15(b) does not apply to CCS's alleged conduct, as Plaintiffs do not allege that CCS actively collected biometric data from them. Plaintiffs claim they were photographed by a CCS ***customer(s)*** that has used CCS's "online platform for the marketing and sale of photos," and that such customer(s) has used CCS's "technology" to support their photography business(es). Compl. ¶¶ 4-5; *see id.* ¶ 24 ("[CCS] claims that . . . '***[p]hotographers*** love to use [CCS's] facial recognition feature to get more images to consumers FAST'") (emphasis added); *id.* ¶¶ 23, 28 (screenshot of CCS's website directed to "potential photographer clients" regarding "Facial Recognition" feature: "It will change how you shoot events."). Plaintiffs characterize CCS as having only the passive role of providing "technology" used by other entities – not as controlling or directing the use of the technology. The mere fact that ***others*** may have collected Plaintiffs' data using CCS's

platform – ***without any active involvement from CCS*** – is insufficient to hold CCS liable under Section 15(b). *See, e.g.*, *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021) ("[F]or § 15(b)'s requirements to apply, an entity must, at a minimum, take an active step to collect, capture, purchase, or otherwise obtain biometric data."); *Jones v. Microsoft Corp.*, 2023 WL 130495, at *3-4 (N.D. Ill. Jan. 9, 2023) ("Under a commonsense reading, . . . the private entity must undertake some effort to collect or obtain biometric [data]. . . . Microsoft contracted with Paychex to provide access to its cloud computing storage platform. But this act . . . does not constitute an active step or affirmative act on Microsoft's part to get, acquire, or obtain [plaintiff's] biometric data.").

Nor do Plaintiffs allege that they had any direct relationship with CCS whereby CCS ***could have*** notified Plaintiffs and obtained their written consent. *See, e.g.*, *Zellmer v. Facebook, Inc.*, 2022 WL 976981, at *3-5 (N.D. Cal. Mar. 31, 2022) (§ 15(b) claim failed where plaintiff lacked direct relationship with defendant; "it would be patently unreasonable to construe BIPA to mean that Facebook was required to provide notice to, and obtain consent from, non-users who were for all practical purposes total strangers to Facebook"). Indeed, Plaintiffs ***admit*** that they "never knowingly dealt with [CCS]," *see* Compl. ¶ 30, highlighting the absurdity that would result by interpreting the statute to require CCS to notify and obtain consent from "total strangers" like Plaintiffs.

**c. Plaintiffs Allege No Facts That CCS "Profited From" Plaintiffs' Data**

Plaintiffs' § 15(c) claim fails for the additional reason that, even taking all the facts in the Complaint as true, Plaintiffs fail to adequately allege that CCS "profit[ed]" from

their biometric data within the meaning of the BIPA. Plaintiffs' Section 15(c) theory boils down to the proposition that CCS used its photography software to "facilitate the sale of photographs through [the] 'Ecommerce platform'" – *i.e.*, to make it easier for CCS customers to sort their photos and then post them for sale online. *See* Compl. ¶ 30. But that "profiting-by-facilitating-sales" theory does not state a valid claim under § 15(c).

Section 15(c) exclusively "regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value." *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021). Plaintiffs allege no such transaction. Plaintiffs' allegations regarding CCS customers purportedly using biometric data to increase the sales of ***photographs*** (which are undisputedly not subject to regulation under the BIPA) does not entail ***sharing*** biometric data with any entity. As one court explained in rejecting a similar § 15(c) claim:

> Plaintiffs' complaint is rife with allegations [about] how Amazon built its Rekognition Software [using] Plaintiffs' biometric information. But the Court agrees that nothing in the pleadings indicate[s] that the biometric information is being directly sold to any third party. Rekognition is [allegedly being sold to third parties], but Rekognition in and of itself is a set of algorithms. . . . ***The Court does not find that a set of algorithms created using biometric information, but not containing any biometric information itself falls under section 15(c)***. . . .

*Hogan v. Amazon.com, Inc.*, No 21 CH 02330, Dec. 6, 2022 Order at 3-4 (Cir. Ct. Cook Cty., Ill.) (attached hereto as **Exhibit F**) (emphasis added). Thus, to adequately allege a § 15(c) claim, Plaintiffs must "plead some facts leading to the inference that [their] 'biometric data is itself so incorporated into [a CCS product] that by marketing the product[s], [CCS] is commercially disseminating [their] biometric data.'" *Id.* at 4 (citation

omitted). Plaintiffs allege no such facts, nor could they. Their § 15(c) claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, CCS respectfully requests that the Court grant this Motion and (i) dismiss Plaintiffs' §§ 15(a) and 15(c) claims under Rule 12(b)(1) for lack of subject-matter jurisdiction and (ii) dismiss Plaintiffs' BIPA claims with prejudice under Rule 12(b)(6) for failure to state a claim.

**Dated: September 19, 2024**

Respectfully submitted,

/s/*Armando J. Rosell*
Armando J. Rosell, OBA #18821
ROSELL & LOVE, PLLC
101 N. Robinson Avenue
Corporate Tower, Suite 700
Oklahoma City, OK 73102
Telephone: (405) 702-0888
Facsimile: (405)601-8751
Email: arosell@rlok.law

AND

Gerald L. Maatman, Jr.
(*pro hac vice* forthcoming)
Jennifer A. Riley
(*pro hac vice* forthcoming)
Justin Donoho
(*pro hac vice* forthcoming)
Tyler Zmick
(*pro hac vice* forthcoming)
DUANE MORRIS LLP
190 South La Salle Street, Suite 3700
Chicago, Illinois 60603-3433
Telephone: (312) 499-6700
Facsimile: (312)499-6701
Email: gmaatman@duanemorris.com
jariley@duanemorris.com

jrdonoho@duanemorris.com
tzmick@duanemorris.com
***Attorney for Defendant Candid Color Systems, Inc.***

**CERTIFICATE OF SERVICE**

I, Armando J. Rosell, certify that on September 19, 2024, I caused a true and correct copy of the foregoing document to be served upon all counsel of record for all parties that have appeared via the Court's CM/ECF System.

/s/ *Gerald L. Maatman, Jr.*
Gerald L. Maatman, Jr.