**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SPENCER MAYHEW and ROSALIE NOREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CANDID COLOR SYSTEMS, INC., an Oklahoma corporation,<br><br>Defendant. | Case No. 5:24-CV-00814-JD<br><br>Hon. Judge Jodi W. Dishman |

**OPENING BRIEF IN SUPPORT OF DEFENDANT CANDID COLOR SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. The Illinois Biometric Information Privacy Act .......... 2

B. The Parties .......... 3

C. Plaintiffs' Allegations .......... 5

D. CCS's Ecommerce Platform .......... 6

III. ARGUMENT .......... 8

A. The Court Should Dismiss Plaintiffs' § 15(c) Claim Under Rule 12(b)(1) .......... 8

1. Legal Standard .......... 8

2. Standing Does Not Exist Regarding Plaintiffs' § 15(c) Claim .......... 9

B. The Court Should Dismiss Plaintiffs' BIPA Claims Under Rule 12(b)(6) .......... 10

1. Legal Standard .......... 10

2. Plaintiffs' BIPA Claims Violate The Extraterritoriality Doctrine Because Plaintiffs Do Not Allege That CCS's Relevant Conduct Occurred "Primarily And Substantially" In Illinois .......... 10

3. Plaintiffs' Claims Also Are Barred By The BIPA's "Government Contractor" Exception .......... 17

4. Plaintiffs' Claims Under §§ 15(a)-(c) Fail For Additional Reasons .......... 21

a. Plaintiffs Allege No Facts Showing That CCS "Possessed" Plaintiffs' Biometric Data (§§ 15(a) and 15(c)) .......... 21

b. Plaintiffs Allege No Facts Showing That CCS "Collected" Plaintiffs' Biometric Data (§ 15(b)) .......... 22

c. Plaintiffs Allege No Facts That CCS "Profited From" Plaintiffs' Data (Section 15(c)) .......... 24

IV. CONCLUSION .......... 26

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 11

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......... 9

*Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) .......... 10

*Doe v. Blackburn Coll.*, 2007 WL 647324 (C.D. Ill. Feb. 27, 2007) .......... 22

*Gorgas v. Amazon.com, Inc.*, 2023 WL 4173051 (N.D. Ill. June 23, 2023) .......... 11

*Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704 (N.D. Ill. Jan. 26, 2022) .......... 17

*Halim v. Charlotte Tilbury Beauty, Inc.*, 2023 WL 3388898 (N.D. Ill. May 11, 2023) .......... 9

*Hazlitt v. Apple, Inc.*, 543 F. Supp. 3d 643 (S.D. Ill. 2021) .......... 10

*Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960 (N.D. Ill. 2020) .......... 24

*Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831 (N.D. Ill. 2021) .......... 24

*Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967 (N.D. Ill. July 27, 2021) .......... 25

*Kashkeesh v. Microsoft Corp.*, 2022 WL 2340876 (N.D. Ill. June 29, 2022) .......... 9

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) .......... 17

*Mayhew v. Candid Color Sys., Inc.*, 2024 WL 3650095 (S.D. Ill. Aug. 5, 2024) .......... 1

*McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089 (D. Del. Sept. 30, 2021) .......... 8, 12-13, 17

*Monroy v. Shutterfly, Inc.*, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) .......... 12

*Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088 (N.D. Ill. 2019) .......... 19

*Redd v. Amazon Web Servs., Inc.*, 2023 WL 3505264 (N.D. Ill. May 17, 2023) .......... 17

*Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017) .......... 12, 18

*Shaw v. Hyatt Int'l Corp.*, 2005 WL 3088438 (N.D. Ill. Nov. 15, 2005)............................ 18

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)................................................................ 9

*Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507 (S.D. Ill. Aug. 5, 2022)................................................................................ 24

*Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339 (N.D. Ill. 2021)............................................ 17

*Thornley v. Clearview AI, Inc.*, 984 F.3d 1241 (7th Cir. 2021).......................................9-11

*TransUnion LLC v. Ramirez*, 594 U.S. 413,424 (2021)..................................................... 9

*Vance v. Amazon.com*, 2022 WL 12306231 (W.D. Wash. Oct. 17, 2022)........................... 19

*Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301 (W.D. Wash. 2021)................................ 26

*Zellmer v. Facebook, Inc.*, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022)............................ 25

**State Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005)............................ 12, 17

*Barnett v. Apple Inc.*, 2022 IL App (1st) 220187............................................................ 23

*Bd. of Ed. of Dist. No. 88, Cook Cnty. v. Home Real Est. Imp. Corp.*, 38 N.E.2d 17 (Ill. 1941)................................................................................ 21

*Better Gov't Ass'n v. Illinois High School Ass'n*, 2017 IL 121124...................................... 22

*Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U...........................................19-21

*Hogan v. Amazon.com, Inc.*, No 21 CH 02330, Dec. 6, 2022 Mem. Op. and Order (Cir. Ct. Cook Cty., Ill.)................................................................................ 27

*Landau v. CNA Fin. Corp.*, 886 N.E.2d 405 (Ill. App. Ct. 2008)...................................... 12

*People v. Ward*, 830 N.E. 2d 556 (Ill. 2005)................................................................... 23

*Stauffer v. Sky Zone Franchise Group, LLC*, July 22, 2022 Order (Cir. Ct. St. Clair Cty., Ill.)................................................................................ 23

**State Statutes**

30 ILCS 805/3 .......... 21

740 ILCS 14/1 .......... *passim*

740 ILCS 14/5 .......... 2

740 ILCS 14/10 .......... 3

740 ILCS 14/15 .......... *passim*

740 ILCS 14/20 .......... 3

740 ILCS 14/25 .......... 2, 19-21

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .......... 1, 8

Federal Rule of Civil Procedure 12(b)(6) .......... *passim*

Federal Rule of Evidence 201(b) .......... 5, 20

**Treatises**

Black's Law Dictionary (11th ed. 2019) .......... 20-21

## I. INTRODUCTION

Plaintiffs Spencer Mayhew and Rosalie Noren have filed a First Amended Complaint (the "FAC") against Candid Color Systems, Inc. ("CCS"), a company based in Oklahoma with no relevant connection to Illinois, for alleged violations of the Illinois Biometric Information Privacy Act (the "BIPA"). As stated in CCS's motion to dismiss Plaintiffs' initial complaint, this is the second forum in which Plaintiffs allege that CCS violated the BIPA. Plaintiffs previously filed a related case in the U.S. District Court for the Southern District of Illinois. It rightly dismissed that action for lack of personal jurisdiction, and thus did not reach CCS's arguments that Plaintiffs failed to state a claim. *See Mayhew v. Candid Color Sys.*, 2024 WL 3650095 (S.D. Ill. Aug. 5, 2024). Plaintiffs then refiled a complaint in the U.S. District Court for the Western District of Oklahoma, but their new forum choice – and their new allegations in the FAC – should yield the same result of dismissal. Plaintiffs fail to state a viable claim, and for numerous reasons, this Court should dismiss the FAC with prejudice under Rules 12(b)(1) and 12(b)(6):

***First***, the Court should dismiss Plaintiffs' BIPA § 15(c) claim because Article III standing does not exist for that claim. Courts consistently hold that the type of § 15(c) claim Plaintiffs allege – where a digital "facial recognition feature" was used to facilitate the sales of photographs – does not present a concrete injury-in-fact for standing purposes.

***Second***, the BIPA does not apply extraterritorially. The BIPA therefore could apply to CCS only if CCS's alleged BIPA-related conduct occurred primarily and substantially in Illinois. Plaintiffs fail to allege that CCS engaged in ***any*** conduct in Illinois giving rise

to BIPA liability. On the contrary, Plaintiffs allege only that Missouri-based non-party Kabance Photo Services, Inc. used CCS's online platform to sort its photos of Plaintiffs.

***Third***, Plaintiffs' claims are barred under the BIPA's "government contractor" exception set forth in § 25(e) of the statute. Plaintiffs' FAC, read in conjunction with documents incorporated therein and/or of which the Court can take judicial notice, shows that the relevant photographs were taken in connection with a CCS customer's agreements to provide photography services at the May 2023 Collinsville High School graduation ceremony and the May 2021 Blackburn College graduation ceremony. CCS's customer organized Plaintiffs' photos and made them available for sale online (as required under the respective agreements) using CCS's software. Thus, CCS functioned as a "subcontractor" by providing its customer and the two respective schools with use of its software.

***Fourth***, Plaintiffs otherwise fail to allege claims under §§ 15(a)-(c) of the BIPA. Accordingly, Plaintiffs' FAC should be dismissed with prejudice.

## II. BACKGROUND

### A. The Illinois Biometric Information Privacy Act

In 2008, the Illinois General Assembly enacted the BIPA in response to the growing use of biometric technology in "financial transactions and security screenings" in Illinois. 740 ILCS 14/5(a). The BIPA imposes certain requirements for the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). The BIPA defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and defines "biometric information" to mean "any information, regardless of how it is captured,

converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. For brevity, this brief refers to biometric identifiers and biometric information, individually and collectively, as "biometric data."

As relevant here, § 15(a) of the BIPA requires private entities "in possession of" biometric data to (1) develop a publicly available "retention schedule and guidelines for permanently destroying biometric [data]" under which biometric data is destroyed "when the initial purpose for collecting or obtaining such [data] has been satisfied or within 3 years of the individual's last interaction with the [entity], whichever occurs first"; and (2) "comply with [their] established retention schedule[s] and destruction guidelines." 740 ILCS 14/15(a). Section 15(b) provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data unless it first obtains a "written release" from the subject. 740 ILCS 14/15(b). And § 15(c) states that a "private entity in possession of" biometric data may not "sell, lease, trade, or otherwise profit from a person's" biometric data. 740 ILCS 14/15(c).

The BIPA's penalties are harsh. "Any person aggrieved" by a violation of the statute may sue for actual damages or liquidated damages of $1,000 per violation (if negligent) or $5,000 per violation (if "intentional[]" or "reckless[]"). 740 ILCS 14/20(a).

### B. The Parties

CCS is an Oklahoma-based photography business that provides its customers (*i.e.*, professional photographers) with various products and services, including software that photographers can use to upload, organize, and sell their photographs to their end-user

customers.[1] *See, e.g.*, ECF No. 25, FAC ¶¶ 10, 23; *id.* ¶ 4 ("[CCS] provides an online platform for the marketing and sale of photos taken at school graduation ceremonies and youth sporting events (among other types of events)."). CCS's primary business is to manufacture photos out of its Oklahoma photo lab by, for example, providing photofinishing services. *See* https://www.candid.com/ (quoted at FAC ¶ 21).

Plaintiffs claim that CCS's platform uses "facial recognition technology," which "can identify facial images in a particular photograph and locate potentially matching facial images among other photographs in a gallery." FAC ¶ 5. Plaintiffs claim this technology is integrated into CCS's web-based "Ecommerce platform" product, and that the "facial recognition feature is made possible only through the collection of biometrics." *Id.* ¶ 25.

Non-party Kabance Photo Services, Inc. ("Kabance") was a Missouri-based[2] photography business and CCS customer who has used the Ecommerce platform to upload, organize, and sell its photographs to end users in connection with events (*e.g.*, graduation ceremonies) at which schools may wish to hire a professional photographer(s). *Id.* ¶¶ 4-5, 39, 41, 53. Mr. Mayhew and Ms. Noren are Illinois residents who claim they were

---

[1] For purposes of CCS's software products, CCS customers are photographers who use the software to operate their photography businesses. These professional photographers interact directly with end-user consumers (*i.e.*, individuals being photographed, along with their relatives, friends, etc. who may wish to purchase the photos). CCS interacts directly only with its professional-photographer customers – not end users. To avoid confusion, in this Motion the term "customer" refers to a professional photographer who has used CCS's software, and the term "end user" refers to an individual who has been photographed by a CCS customer (or a consumer who has purchased photos taken by a CCS customer).

[2] *See* Missouri Secretary of State, *Search for a Business Entity – Search Results for KABANCE PHOTO SERVICES, INC.*, https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail.aspx?page=beSearch&ID=347955 (last accessed Sept. 15, 2024) (**Ex. 1**). The Court can take judicial notice of this fact. *See* Fed. R. Evid. 201(b).

photographed "by photographers working on behalf of Kabance" in May 2023 and May 2021, respectively, and that their images were then uploaded to the Ecommerce platform. *See id.* ¶¶ 8-9, 41, 53.

### C. Plaintiffs' Allegations

Mr. Mayhew claims that "photographers working on behalf of Kabance, as part of the Grad Photo Network" (for which CCS allegedly owns the trademark), photographed him during his graduation from Collinsville High School. *See id.* ¶¶ 33, 40-41. Kabance then uploaded the photos to the Grad Photo Network ("GPN") website and later emailed Mr. Mayhew's mother a link through which she could view and purchase his graduation photos. *See id.* ¶¶ 41, 47-48. (Mr. Mayhew does not explain how the photographers obtained his mother's name and email address.) According to Mr. Mayhew, when viewing the photos on the GPN website, a "dotted-line rectangular field automatically appears around [his] face." *Id.* ¶ 43. Mr. Mayhew alleges that the appearance of this "rectangular field" around his face indicates that CCS's Ecommerce platform "extracted [his] faceprint" and "therefore collected [his] biometrics." *Id.* ¶ 46. Ms. Noren similarly claims that "photographers working on behalf of Kabance, as part of the [GPN]," photographed her during her graduation from Blackburn College, uploaded the photos to the GPN website, and later emailed her "soliciting her to purchase the photos." *See id.* ¶¶ 52-53, 59. (Ms. Noren does not explain how the photographers obtained her name and email address.) Like Mr. Mayhew, Ms. Noren alleges that the photos on the GPN website depict a "dotted-line rectangular field … around [her] face," allegedly indicating that the Ecommerce platform "extracted [her] faceprint" and "therefore collected [her] biometrics." *Id.* ¶¶ 56, 58.

Based on these allegations, Plaintiffs allege that CCS violated the BIPA by: [i] failing to develop or comply with a public retention schedule regarding the storage of biometric data, in alleged violation of § 15(a), *e.g.*, *id.* ¶ 90; [ii] collecting Plaintiffs' biometric data without providing the requisite notice and obtaining their written consent, in alleged violation of § 15(b), *e.g.*, *id.* ¶¶ 98, 106, 114; and [iii] "profit[ing] from the biometrics of Plaintiffs and the Class members by using [the biometrics] to facilitate the sale of photographs," in alleged violation of § 15(c), *e.g.*, *id.* ¶ 122.

**D. CCS's Ecommerce Platform**

The FAC refers to CCS's web-based software product that includes a customizable "Ecommerce" platform used by professional photographers. *See, e.g.*, *id.* ¶¶ 22-23 (alleging CCS offers "a web-based 'Ecommerce platform'" that includes features that photographers can use "from an onsite computer or mobile device"). CCS customers can configure the Ecommerce platform to fit their needs, including by changing the appearance and functionality of the consumer-facing webpages associated with their Ecommerce accounts; creating personal, team, class, and/or event galleries; and electing to use one or more optional software features. *See, e.g.*, *id.* ¶ 21 (alleging that CCS "connect[s] photographers with innovative products and workflow solutions" and that CCS "ha[s] the tools to help [photographers] effectively market and sell images from events both small and large"). As reflected in the FAC, CCS customers (rather than CCS) control the photos that CCS customers elect to take and upload to the Ecommerce platform (including the location in which any end users are photographed), and any decision as to the method

customers use to sort photos uploaded to their Ecommerce accounts are made by the customers. *See id.* ¶ 24.

To organize, manage, and sell their photos using the Ecommerce platform, customers first upload their images to their respective Ecommerce accounts. *See id.* ¶¶ 39, 48, 53. Once uploaded, customers can sort the photos and make them available online for viewing and purchase by end users. *See id.* ¶¶ 42, 54. Sorting photos in this way allows photographers to present online galleries to end users containing the photos of the individual in which they are interested. *See id.* Customers have been able to elect to use an optional "facial recognition feature" to sort and organize their photos. *Id.* ¶ 23. This is one of many tools customers can utilize through the Ecommerce platform. *See id.* ¶ 21.

The FAC reflects that Mr. Mayhew was photographed four times during the May 13, 2023 graduation ceremony held at Collinsville High School in Collinsville, Illinois. *Id.* ¶ 50.[3] The FAC further reflects that a photographer affiliated with Kabance – a photography business based in St. Louis, Missouri – took the four photos of Mr. Mayhew and uploaded them to Kabance's Ecommerce account. *Id.* ¶ 41; Ex. 2 (webpage containing proofs of photos: "KABANCE Photo Services, Inc., 5015 Hampton Ave., St. Louis MO 63109").

---

[3] The four photographs of Mr. Mayhew appear in the screenshot attached hereto as **Exhibit 2**. The Court can consider this document in ruling on CCS's Rule 12(b)(6) motion to dismiss because the FAC repeatedly refers to the photographs of Mr. Mayhew by describing how, when, and where they were taken, how they were uploaded to the Ecommerce platform, and how they appeared when viewed online. *See* FAC ¶¶ 40-43. Thus, under the incorporation-by-reference doctrine, the Court may consider the photos as depicted in Exhibit 2 in ruling on CCS's motion. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *4 n.3 (D. Del. Sept. 30, 2021) (where plaintiffs' complaint "cite[d] the AWS website multiple times," court could consider relevant documents depicted on that website).

In addition, the FAC reflects that Ms. Noren was photographed six times during the graduation ceremony held at Blackburn College in Carlinville, Illinois. FAC ¶ 53.[4] The FAC further reflects that a photographer affiliated with Missouri-based Kabance took the six photos of Ms. Noren and uploaded them to Kabance's Ecommerce account. *Id.*; Ex. 3.

## III. ARGUMENT

### A. The Court Should Dismiss Plaintiffs' § 15(c) Claim Under Rule 12(b)(1)

#### 1. Legal Standard

To have standing under Article III of the U.S. Constitution, Plaintiffs must allege that they (1) suffered an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To meet the first requirement, they must allege that they suffered a "concrete – that is, real, and not abstract" injury with a "close historical or common-law analogue" "traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (internal quotation marks omitted).

In discussing standing in the context of § 15(c) of the BIPA, the Seventh Circuit has explained that § 15(c) creates a "general rule that prohibits the operation of a market in biometric [data]," *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021), and that absent "allegations of concrete and particularized harm," a claim that a company violated § 15(c) is insufficient to establish standing. *See Halim v. Charlotte Tilbury Beauty, Inc.*, 2023 WL 3388898, at *9 (N.D. Ill. May 11, 2023). The Seventh Circuit noted that

---

[4] The six photographs of Ms. Noren appear in the screenshot attached hereto as **Exhibit 3**. The Court can consider this document in ruling on CCS's Rule 12(b)(6) motion to dismiss for the same reasons stated in footnote 3 above.

standing ***might*** exist for a § 15(c) claim if a plaintiff plausibly alleged that he "suffered a particularized injury resulting from the operation of such a market [in biometric data]," *Kashkeesh v. Microsoft*, 2022 WL 2340876, at *3 (N.D. Ill. June 29, 2022) – for example, by asserting "that by selling her data, the collector has deprived her of the opportunity to profit from her biometric information" or "that the act of selling her data amplified the invasion of her privacy … by disseminating it to some unspecified number of other people." *Halim*, 2023 WL 3388898, at *8-9.

**2. Standing Does Not Exist Regarding Plaintiffs' § 15(c) Claim**

Plaintiffs' § 15(c) claim (still) suffers from the same defect as the § 15(c) claim asserted in *Thornley*. Plaintiffs claim that CCS "profited" by incorporating a "facial recognition feature" into its photography software, which software used Plaintiffs' purported biometrics "to facilitate the sale of photographs through the [GPN] Website." FAC ¶¶ 25, 76. Courts consistently find standing lacking under these circumstances, where a company is alleged only to have used a purportedly "biometric" feature to "competitively position its … software in the marketplace, compete with other software applications, and thereby profit." *Hazlitt v. Apple, Inc.*, 543 F. Supp. 3d 643, 651 (S.D. Ill. June 14, 2021) (no standing where plaintiffs did not allege that defendant "sold or otherwise profited from their <u>individual</u> biometric data"); *see also Daichendt v. CVS Pharmacy*, 2022 WL 17404488, at *3-4 (N.D. Ill. Dec. 2, 2022) (no standing where plaintiffs alleged only "that defendant's conduct violates § 15(c) because it generally advertised the photo system, with its alleged use of biometric[s] ... to generally profit from passport photos").

Plaintiffs try to establish standing by alleging that use of the "facial recognition feature" to facilitate the sales of photographs resulted in Plaintiffs "los[ing] control" over their biometrics. *See* FAC ¶¶ 50, 61, 123. These new allegations reflect an unsuccessful attempt to establish standing using the hypothetical scenarios imagined by the *Thornley* court. Unlike those hypotheticals, however, Plaintiffs do not claim they lost control over their biometrics due to ***the sale of their biometrics***. That is, Plaintiffs do not allege that CCS injured them in any discernable way based on "the act of selling [their] data" (which CCS did not do). Accordingly, the Court should dismiss Count V of the FAC for lack of Article III standing.

### B. The Court Should Dismiss Plaintiffs' BIPA Claims Under Rule 12(b)(6) For Failure To State A Claim

#### 1. Legal Standard

Rule 12(b)(6) requires dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." To plead a viable cause of action, allegations must transcend the "speculative," "conceivable," and "possible," and must "state a claim that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). The Court must disregard "legal conclusions" and scrutinize factual allegations to ensure they are more than "merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009).

#### 2. Plaintiffs' BIPA Claims Violate The Extraterritoriality Doctrine Because Plaintiffs Do Not Allege That CCS's Relevant Conduct Occurred "Primarily And Substantially" In Illinois

For similar reasons that the Southern District of Illinois correctly held that it lacked personal jurisdiction over CCS under the facts alleged, the FAC should be dismissed under

Illinois's extraterritoriality doctrine. The BIPA was not "intended to have extraterritorial effect," *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017), and therefore "asserted violations … must have taken place in Illinois" to fall within the statute. *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017). CCS could be subject to the BIPA only if "the majority of circumstances relating to the alleged violation[s]" occurred in Illinois. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008); *see Avery v. State Farm*, 835 N.E.2d 801, 853 (Ill. 2005) ("the circumstances relating to the claim [must have] occur[ed] primarily and substantially" in Illinois).

Plaintiffs' BIPA claims fail because Plaintiffs have not alleged, and cannot allege, that CCS engaged in ***any*** conduct in Illinois. There is no dispute that "BIPA violations must occur in Illinois in order for plaintiffs to obtain any relief." *McGoveran*, 2021 WL 4502089, at *3. And under Illinois extraterritoriality principles, BIPA violations only occur in Illinois where the relevant circumstances "occur[ed] primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 854. Here, Plaintiffs have not identified ***any*** conduct by CCS in Illinois implicating the BIPA. The reason is obvious: Plaintiffs ***cannot*** plausibly make such allegations given that the photographs were taken by Kabance (not CCS), are owned by Kabance (not CCS), and were uploaded to the Ecommerce platform by Kabance (not CCS) from Missouri.

Plaintiffs instead point repeatedly to their own conduct in Illinois or to conduct of a third party (*i.e.*, Kabance) to try to show a relevant Illinois connection, but that cannot remedy their extraterritoriality problem. Plaintiffs allege that they are residents of Illinois. FAC ¶¶ 8-9. But a "plaintiff's residency is not enough to establish an Illinois connection

in order to survive a motion to dismiss based on extraterritoriality." *McGoveran*, 2021 WL 4502089, at *4 (collecting cases). Plaintiffs further allege that their photos were taken while they were in Illinois. FAC ¶¶ 40-41, 52-53. These allegations – that Plaintiffs are Illinois residents who were photographed at graduation ceremonies in Illinois – are the ***only*** Illinois-specific factual allegations regarding the conduct underlying their BIPA claims. Plaintiffs do not plausibly allege that their photographs were uploaded to the Ecommerce Platform from Illinois, or that any other part of the relevant process took place in Illinois. Plaintiffs claim they lack "knowledge as to where the photos were uploaded to the [GPN] Website or scanned for biometrics, but given the functionality described in paragraphs 22 and 31, it reasonably can be inferred that the photos may have been uploaded or scanned for biometrics in Illinois." *Id.* ¶¶ 41, 53. This new allegation does not solve their extraterritoriality problem. For one, even if Plaintiffs adequately alleged that non-party Kabance uploaded their photos to the GPN website from Illinois, that would not show that ***CCS*** engaged in any relevant conduct in Illinois. Furthermore, Plaintiffs cannot meet their Rule 8 pleading standard by speculating that "the photos ***may have been*** uploaded or scanned for biometrics in Illinois." *Id.* ¶¶ 41, 53 (emphasis added). Nor can it "reasonably be inferred" from Paragraphs 22 and 31 – Paragraphs that do not reference conduct occurring in Illinois – that Kabance uploaded the photos to the GPN website from Illinois.

Plaintiffs also try to allege a relevant Illinois connection by [i] claiming CCS "offers to connect potential customers (*i.e.*, high schools, colleges, or universities) to photographers within the [GPN]," *id.* ¶ 33 (citing https://www.candid.com/grad-photo-network/); [ii] pointing to the Terms and Conditions posted on the GPN website as

purported support for Plaintiffs' (mis)characterization that CCS "exercises control over orders that are placed through the [GPN] website"; and [iii] pointing to the Privacy Policy posted on the same website in trying to show that CCS "exercises control over the [GPN] website and orders placed through [it]." *Id.* ¶¶ 35-38. Plaintiffs' attempt fails.

Regarding CCS allegedly "offer[ing] to connect potential customers," this new claim does nothing to cure Plaintiffs' pleading deficiencies and does not establish an Illinois connection because Plaintiffs do not (and cannot) allege that CCS put Collinsville High School or Blackburn College in touch with Kabance through the GPN; this allegation thus shows no relevant Illinois connection with respect to Plaintiffs' specific claims. And even ***if*** CCS did play a role in connecting the two schools with Kabance (it did not, and Plaintiffs do not allege otherwise), that would be completely unrelated to Kabance itself deciding to use the optional "facial recognition feature" to sort its photos.

As for the Terms and Conditions and Privacy Policy posted on the GPN website, Plaintiffs rely on the following language: (a) "CCS may, but is not obligated to, monitor the information, including photographs, that could be posted on this site"; and (b) "CCS may refuse orders for products with indecent, obscene, lewd, or illegal material or that may violate copyrights or privacy rights of others or for any other reason." *Id.* ¶ 36 (quoting https://www.gradphotonetwork.com/qpplus/conditionsofuse). Plaintiffs also try to establish an Illinois connection by describing CCS's purported role in processing payments for orders and delivering purchased photographs to the end users of CCS's photographer-customers. *See id.* ¶¶ 37-38. Plaintiffs' reliance on the GPN Terms and Conditions and Privacy Policy amounts to nothing more than misdirection. Importantly, Plaintiffs' alleged

injuries in this case involve the collection, storage, and use of their biometric "faceprint[s]," *id.* ¶ 27, which occurred (if at all) when Kabance used its Ecommerce account to sort its photos by end user – a process [i] that took place before Plaintiffs' ***photographs*** (which are undisputedly ***not*** biometric data under the BIPA, *see* 740 ILCS 14/10) could be viewed or purchased through the GPN website and [ii] that has no connection to whether an end user purchases a photo. That the end-user purchaser in this case was Ms. Mayhew, a non-party, further underscores the lack of any connection between the collection of Plaintiffs' "faceprint[s]" and the sale of photos to Illinois end users. *See* FAC ¶¶ 47-48. Put another way, an entity shipping photos to end users in Illinois is unrelated to any alleged collection or possession of Plaintiffs' biometric data.

*Kauffman v. The Home Depot* is instructive. In *Kauffman*, plaintiff alleged that Home Depot violated California wiretapping laws by using "session replay" software on its website. 2024 WL 221434, at *1 (S.D. Cal. Jan. 19, 2024). Home Depot allegedly "maintained a website that Kauffman 'placed an order' from, starting a chain of events that ended with a product being 'shipped to California.'" *Id.* at *2. The court dismissed plaintiff's privacy claims for lack of personal jurisdiction because he "[did] not carr[y] his burden to show that any claim 'arises out of or relates to' defendant's forum-related activities." *Id.* at *3. The court explained that the principle that a defendant "expressly aims" conduct at a forum state by "[selling] a physical product to a consumer in th[at] state via an interactive website" does ***not*** mean a defendant expressly aims conduct at the state regarding "'the extraction of consumer data' that forms the basis of privacy-related claims." *Id.* ("After all, Kauffman doesn't object to the product he received or its shipment;

he complains that his actions on the website were captured. By his own admission, that claim accrued 'the moment [p]laintiff … visited [d]efendant's website,' even before he made any purchases."). The same is true here, as Plaintiffs' claims are not premised on the sale or delivery of non-biometric ***photographs***.[5]

Plaintiffs being photographed at Illinois ceremonies is unilateral conduct by Plaintiffs in Illinois. CCS is at least two steps removed from that conduct, as: (1) it was Missouri-based Kabance who photographed Plaintiffs at their respective graduation ceremonies, *see* FAC ¶¶ 41, 53; and (2) it was Missouri-based Kabance who uploaded the photos and used the "facial recognition" tool to sort them (presumably from Missouri). *See id.* Such conduct by others fails to allege, or even suggest, any conduct by CCS occurring primarily and substantially in Illinois. This is ultimately why Plaintiffs' claims against CCS were dismissed for lack of personal jurisdiction, and this Court should dismiss the claims for similar reasons under the extraterritoriality doctrine. Indeed, cases dismissing BIPA claims for lack of specific personal jurisdiction further illustrate Plaintiffs' extraterritoriality problem. It is difficult, if not impossible, to pass the ***more*** exacting extraterritoriality test (demanding that conduct take place "primarily and substantially" in Illinois, *Avery*, 835 N.E.2d at 853), but fail the lesser test for personal jurisdiction (demanding only some suit-related activities that were "purposefully directed" at the forum state by the defendant, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). *See also McGoveran*, 2021 WL 4502089, at *5 (recognizing that earlier dismissal for lack of

[5] While *Kauffman* involved a personal jurisdiction challenge, its reasoning is equally applicable to the present extraterritoriality analysis.

personal jurisdiction by the Southern District of Illinois "underscores the weak connection between [p]laintiffs' allegations and Illinois"). And so, cases dismissing BIPA claims for lack of personal jurisdiction further support dismissal based on extraterritoriality here. *See, e.g.*, *Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022) (dismissing claims where the only Illinois contact was the unilateral choice of 50,000 Illinois users to sign up for a Canadian company's application with biometric features); *Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339, 344, 346 (N.D. Ill. 2021) (dismissing claims where New York-based Clarifai allegedly acquired photographs through a "Chicago-based venture capital fund" because the jurisdictional test, like the extraterritoriality test, demands that "contacts with Illinois must come from [defendant's] suit-related activity in the forum state, not from the activity of a third party"); *Redd v. Amazon Web Servs., Inc.*, 2023 WL 3505264, at *3 (N.D. Ill. May 17, 2023) (dismissing claims where "[a]side from registering to do business in Illinois, the only alleged link between AWS and Illinois runs through [third party] Wonolo").

Finally, to the extent Plaintiffs contend that resolution of the extraterritoriality issue is premature at the motion-to-dismiss stage, they are incorrect. Dismissal is appropriate on extraterritoriality grounds where Plaintiffs fail to plead the requisite facts. *See Shaw v. Hyatt Int'l Corp.*, 2005 WL 3088438, at *2 (N.D. Ill. Nov. 15, 2005) (dismissing claims based on extraterritoriality at Rule 12(b)(6) stage where "allegations have virtually no connection to Illinois"). This case is distinguishable from those situations where courts have treated extraterritoriality as an inherently factual question that is better suited for resolution at a later stage because the alleged Illinois conduct in those cases was not

unilateral conduct by the plaintiffs many steps removed from the defendant. *See, e.g.*, *Rivera*, 238 F. Supp. 3d at 1100 (requiring discovery to resolve extraterritoriality question where plaintiffs alleged that Google scanned photos uploaded to Google Photos from devices in Illinois).

Plaintiffs seek to extend the BIPA well beyond its geographic boundaries. As Plaintiffs would have it, a company headquartered in Oklahoma (CCS) can be held liable under an Illinois statute (the BIPA) for providing an online photography platform from Oklahoma based on photos being uploaded to the platform by a Missouri company (Kabance) simply because the (non-biometric) photos happen to include images of Illinois residents (Plaintiffs). That position plainly violates Illinois's prohibition against the extraterritorial application of its laws. Hence, this Court should dismiss the FAC because Plaintiffs do not allege that any CCS conduct occurred "primarily and substantially" in Illinois, nor do they have a good faith basis to do so. *See Vance v. Google LLC*, 2024 WL 1141007, at *3 (N.D. Cal. Mar. 15, 2024) ("Plaintiffs have not plausibly alleged any 'direct interaction' with Google that could plausibly be imputed to Illinois such that it would 'g[i]ve rise to the alleged BIPA violations.'"). Thus, the BIPA simply does not apply. *See id.* (dismissing BIPA claims on extraterritoriality grounds). For these reasons, the Court should dismiss the FAC in its entirety under Rule 12(b)(6).

**3. Plaintiffs' Claims Also Are Barred By The BIPA's "Government Contractor" Exception**

Plaintiffs' claims also fail for a separate and independent reason – namely, they are barred by the BIPA's "government contractor" exception. *See* 740 ILCS 14/25(e)

("Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government."). The Illinois Appellate Court has stated that "an entity is exempt under [S]ection 25(e) if it is (1) a contractor [or in this case, a subcontractor] (2) of a unit of government and (3) was working for that unit of government at the time it collected or disseminated biometric information." *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U, ¶ 19, *appeal denied,* 201 N.E.3d 582 (Ill. 2023).

Each prong is easily satisfied, as [i] Mr. Mayhew's BIPA claims involve photos taken by CCS customer Kabance during his graduation ceremony at Collinsville High School, FAC ¶ 41; [ii] Collinsville High School is a public high school within Collinsville Community Unit School District 10;[6] and [iii] Kabance was working for Collinsville Community Unit School District 10 when Kabance took photos of Mr. Mayhew, sorted them using CCS's software, and made them available for purchase online using CCS's software. In other words, CCS functioned as a "subcontractor" by providing Kabance with use of the software, and government subcontractors are expressly covered by § 25(e).

Regarding the first prong, Kabance qualifies as a "contractor" of Collinsville Community Unit School District 10. The Illinois Appellate Court broadly interpreted the term "contractor" in *Enriquez*. *See Enriquez*, 2022 IL App (1st) 211414-U, ¶ 20 ("[T]he [BIPA] itself does not define 'contractor,' so we must apply its ordinary meaning. Black's

[6] *See* Collinsville Kahoks – Collinsville Community Unit School District 10, *Collinsville High School*, https://www.kahoks.org/schools/collinsville-high-school/ (last accessed Sept. 15, 2024).

Law Dictionary (11th ed. 2019) defines 'contractor' as '1. A party to a contract. 2. More specif., one who contracts to do work for or supply goods to another; esp., a person or company that agrees to do work or provide goods for another company."). Here, Collinsville High School and Kabance agreed that Kabance would provide photography services at the May 13, 2023 graduation ceremony and make the photos available online for viewing and purchase. *See* Decl. of Cate Nash ¶ 5 (**Ex. 4**); Nash Decl. Ex. 1 (2023 Commencement Agreement Between Collinsville High School and Kabance obtained via FOIA request);[7] *see also* Collinsville Kahoks – Collinsville Community Unit School District 10, *Celebrating the Class of 2021*, https://www.kahoks.org/headlines/celebrating-the-class-of-2021/ (last accessed Sept. 15, 2024) ("**Pictures** will be provided to graduates by Kabance Photo Service courtesy of CHS and Unit #10.").

Moreover, CCS qualifies as a "subcontractor" under § 25(e) of the BIPA. A "subcontractor" is a business that undertakes to perform part or all of the obligations of another's contract. *See* Black's Law Dictionary (11th ed. 2019) ("subcontractor": "Someone who is awarded a portion of an existing contract by a contractor, esp. a general contractor"). Regardless of whether CCS has had a direct relationship with Collinsville High School, CCS has contracted directly with Kabance (the direct government contractor) in providing it with use of the Ecommerce platform, which Kabance needed to perform ***its*** contractual obligations owed to Collinsville High School – *i.e.*, to photograph graduates and make the photos available online for viewing and purchase.

---

[7] The Court can take judicial notice of this publicly available government contract obtained via FOIA request in considering CCS's Motion to Dismiss. *See* Fed. R. Evid. 201(b).

Regarding the second prong, Collinsville High School is clearly an "agent of a State agency or local unit of government." 740 ILCS 14/25(e); *see, e.g.*, 30 ILCS 805/3(a) ("'Local government' means a municipality, county, township, other unit of local government, ***school district***, or community college district.") (emphasis added); *Bd. of Ed. of Dist. No. 88, Cook Cnty. v. Home Real Est. Imp. Corp.*, 38 N.E.2d 17, 20 (Ill. 1941) ("School districts are quasi municipal corporations.").

Regarding the third prong, Kabance (and by extension, CCS) allegedly worked for Collinsville High School "at the time [it] collected … biometric information." *Enriquez*, 2022 IL App (1st) 211414-U, ¶ 19 (affirming dismissal of BIPA complaint brought against company that contracted with governmental entity that owns Navy Pier in Chicago); *id.* ¶ 23 ("The phrase 'contractor working for a local unit of government' refers to a contractor in some type of employment or services relationship … with that unit of government.'"). Kabance promised to photograph Collinsville High School graduates, organize the photos, and make them available online for viewing and purchase. *See* Nash Decl. Ex. 1. Kabance relied on CCS's platform at each step of this process – meaning both Kabance (as a contractor) and CCS (as a subcontractor) were working for Collinsville High School at the time Mr. Mayhew's "biometric data" was allegedly collected, possessed, and/or "profited from." The Court should therefore dismiss Plaintiffs' FAC with prejudice under Rule 12(b)(6).[8]

---

[8] Ms. Noren's claims also are barred by the "government contractor" exception, despite her photos having been taken during her graduation from Blackburn College, a "private institution." *See* FAC ¶ 52. Illinois courts acknowledge that even private entities can constitute local public entities in certain circumstances. *See, e.g.*, *Better Gov't Ass'n v.*

#### 4. Plaintiffs' Claims Under §§ 15(a)-(c) Fail For Additional Reasons

##### a. Plaintiffs Allege No Facts Showing That CCS "Possessed" Plaintiffs' Biometric Data (§§ 15(a) and 15(c))

Even if the Court had subject-matter jurisdiction with respect to Plaintiffs' § 15(c) claim (it does not, *see* Part III.A), the Court should dismiss both that claim and the § 15(a) claim under Rule 12(b)(6). Sections 15(a) and 15(c) apply only to private entities "in possession" of biometrics. 740 ILCS 14/15(a), (c). The Illinois Supreme Court has found that "possession," as ordinarily understood, "occurs when a person has or takes control of the subject property or holds the property at his or her disposal." *People v. Ward*, 830 N.E. 2d 556, 560 (Ill. 2005). Thus, to trigger the BIPA's "possession" requirements, a defendant must "take control" of biometric data or "hold" it "at his or her disposal." *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶¶ 39-43, 57-58 (affirming trial court's dismissal of BIPA action where plaintiffs failed to allege that Apple collected or possessed their biometrics by asserting only that "Apple designed and owns the software that plaintiffs opted to use").

Here, Plaintiffs do not allege that CCS controlled or even knew about the data (including photos of them) that was allegedly uploaded to the Ecommerce platform. Nor could they, as the FAC demonstrates that CCS-customer photographers (not CCS) own and control the photos (and any data derived therefore) they have taken and uploaded to their

---

*Illinois High School Ass'n*, 2017 IL 121124, ¶ 32 (noting private company can be local public entity for purposes of Tort Immunity Act if it is "organized for the purpose of conducting public business" and it "remains subject to 'operational control by a unit of local government'") (citations omitted); *see also Doe v. Blackburn Coll.*, No. 06-CV-3205, 2007 WL 647324, at *1 (C.D. Ill. Feb. 27, 2007) (acknowledging that immunity under Illinois School Code can apply to private institutions, including Blackburn College).

Ecommerce accounts. *See, e.g.*, FAC ¶¶ 23 (noting CCS's "photographer clients" can use the Ecommerce platform to organize and sell "their images" to end users). Nothing in the FAC suggests CCS knew about these "photographer clients" uploading photos of Plaintiffs to the clients' Ecommerce accounts, or that CCS exercised, or could have exercised, any control over the data. *See Stauffer v. Sky Zone*, No. 19-L-311, July 22, 2022 Order at 3-4 (Cir. Ct. St. Clair Cty., Ill.) (dismissing § 15(a) claim brought against franchisor-defendant Sky Zone where plaintiff "has not alleged sufficient facts … to allege possession of … biometric data" and noting § 15(a) does not apply to entities that "have no interaction" with plaintiff) (**Ex. 5**). In short, it defies common sense – and the text of the BIPA – to say that CCS "possessed" Plaintiffs' data when it was subject to customers' exclusive "dominion and control" at all times. *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 962, 968-69 (N.D. Ill. 2020) (dismissing § 15(a) claim against defendant who allegedly "stored" biometric data on behalf of other party because allegations of mere storage did not amount to "form of control" or show that defendant "could freely access the data").[9]

**b. Plaintiffs Allege No Facts Showing That CCS "Collected" Plaintiffs' Biometric Data (§ 15(b))**

Unlike §§ 15(a) and 15(c), which apply to the "possession" of biometric data, only affirmative ***actions*** trigger § 15(b): the private entity must "collect, capture, purchase, receive through trade," or "obtain" biometric information. 740 ILCS 14/15; *see, e.g.*,

[9] The *Heard* court later allowed plaintiff's § 15(a) claim to survive a second motion to dismiss. *See Heard*, 524 F. Supp. 3d 831 (N.D. Ill. 2021). But the court did so only after plaintiff amended the complaint to add plausible allegations that defendant "exercise[d] some form of control" over plaintiff's data. Plaintiffs' FAC includes no such allegations.

*Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507, at *4 (S.D. Ill. Aug. 5, 2022) ("To recognize and honor this intentional distinction in the language used by the Illinois legislature in different sections of BIPA ('collection' vs. 'possession'), district courts from within the Seventh Circuit … have concluded that in order for § 15(b) to apply, the defendant must take an *active step* to collect, capture, or otherwise obtain the plaintiff's biometric information.") (emphasis in original).

Section 15(b) does not apply to CCS's alleged conduct, as Plaintiffs do not allege that CCS actively collected biometric data from them. Plaintiffs claim they were photographed by a CCS ***customer(s)*** that has used CCS's "online platform for the marketing and sale of photos," and that such customer(s) has used CCS's "technology" to support their photography business(es). FAC ¶¶ 4-5; *see id.* ¶ 24 ("[CCS] claims that . . . '***[p]hotographers*** love to use [CCS's] facial recognition feature to get more images to consumers FAST'") (emphasis added); *id.* ¶¶ 23, 28 (screenshot of CCS's website directed to "potential photographer clients" regarding "Facial Recognition" feature: "It will change how you shoot events."). Plaintiffs characterize CCS as having only the passive role of providing "technology" used by other entities – not as controlling or directing the use of the technology. The mere fact that ***others*** may have collected Plaintiffs' data using CCS's platform – ***without any active involvement from CCS*** – is insufficient to hold CCS liable under § 15(b). *See, e.g.*, *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021) ("[F]or § 15(b)'s requirements to apply, an entity must, at a minimum, take an active step to collect, capture, purchase, or otherwise obtain biometric data."); *Bhavilai v. Microsoft*, 2024 WL 992928, at *1 (N.D. Ill. Feb. 8, 2024) ("[Plaintiff]

argues that because Microsoft retained the ability to control whether and how a user could use the facial scan software demonstrates that Microsoft was in fact the collector. But selling or licensing a tool that can be used to collect a facial scan is not the same as actually doing the collecting."); *Jones v. Microsoft*, 2023 WL 130495, at *3-4 (N.D. Ill. Jan. 9, 2023) ("Microsoft contracted with Paychex to provide access to its cloud computing storage platform. But this act … does not constitute an active step or affirmative act on Microsoft's part to get, acquire, or obtain [plaintiff's] biometric data.").

Nor do Plaintiffs allege that they had any direct relationship with CCS whereby CCS ***could have*** notified Plaintiffs and obtained their written consent. *See, e.g.*, *Zellmer v. Facebook, Inc.*, 2022 WL 976981, at *3-5 (N.D. Cal. Mar. 31, 2022) (§ 15(b) claim failed where plaintiff lacked direct relationship with defendant; "it would be patently unreasonable to construe BIPA to mean that Facebook was required to provide notice to, and obtain consent from, non-users who were for all practical purposes total strangers to Facebook"). Indeed, Plaintiffs ***admit*** that they "never knowingly dealt with [CCS]," *see* FAC ¶ 30, highlighting the absurdity that would result by interpreting the statute to require CCS to notify and obtain consent from "total strangers" like Plaintiffs.

#### c. Plaintiffs Allege No Facts That CCS "Profited From" Plaintiffs' Data (Section 15(c))

Plaintiffs' § 15(c) claim fails for the additional reason that, even taking all the facts in the FAC as true, Plaintiffs fail to adequately allege that CCS "profit[ed]" from their biometric data within the meaning of the BIPA. Plaintiffs' § 15(c) theory boils down to the proposition that CCS used its photography software to "facilitate the sale of photographs

through [the] 'Ecommerce platform'" – *i.e.*, to make it easier for CCS customers to sort their photos and then post them for sale online. *See* FAC ¶ 30. But that "profiting-by-facilitating-sales" theory does not state a valid claim under § 15(c).

Section 15(c) exclusively "regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value." *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021). Plaintiffs allege no such transaction. Plaintiffs' allegations regarding CCS customers purportedly using biometric data to increase the sales of ***photographs*** (which are undisputedly not subject to regulation under the BIPA) does not entail ***sharing*** biometric data with any entity. As one court explained in rejecting a similar § 15(c) claim:

> Plaintiffs' complaint is rife with allegations [about] how Amazon built its Rekognition Software [using] Plaintiffs' biometric information. But the Court agrees that nothing in the pleadings indicate[s] that the biometric information is being directly sold to any third party. Rekognition is [allegedly being sold to third parties], but Rekognition in and of itself is a set of algorithms. … ***The Court does not find that a set of algorithms created using biometric information, but not containing any biometric information itself falls under [§] 15(c)***.

*Hogan v. Amazon.com, Inc.*, No 21 CH 02330, Dec. 6, 2022 Order at 3-4 (Cir. Ct. Cook Cty., Ill.) (**Ex. 6**) (emphasis added). Thus, to adequately allege a § 15(c) claim, Plaintiffs must "plead some facts leading to the inference that [their] 'biometric data is itself so incorporated into [a CCS product] that by marketing the product[s], [CCS] is commercially disseminating [their] biometric data.'" *Id.* at 4 (citation omitted). Plaintiffs allege no such facts, nor could they. Their § 15(c) claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, CCS respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint with prejudice under Rules 12(b)(1) and 12(b)(6).

**DATED: October 25, 2024**

Respectfully submitted,

*/s/ Gerald L. Maatman, Jr.*

Armando J. Rosell (OBA #18821)
(arosell@rlok.com)
ROSELL & LOVE, PLLC
101 N. Robinson Avenue
Corporate Tower, Suite 700
Oklahoma City, OK 73102
Telephone: (405) 702-0888

Gerald L. Maatman, Jr. (*admitted pro hac vice*)
(gmaatman@duanemorris.com)
Jennifer A. Riley (*admitted pro hac vice*)
(jariley@duanemorris.com)
Justin Donoho (*admitted pro hac vice*)
(jrdonoho@duanemorris.com)
Tyler Zmick (*admitted pro hac vice*)
(tzmick@duanemorris.com)
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Telephone: (312) 499-6700

***Attorneys for Defendant Candid Color Systems, Inc.***

**CERTIFICATE OF SERVICE**

I, Gerald L. Maatman, Jr., an attorney, certify that on October 25, 2024, I caused a true and correct copy of the foregoing document to be served upon all counsel of record for all parties that have appeared via the Court's CM/ECF System.

/s/ *Gerald L. Maatman, Jr.*
Gerald L. Maatman, Jr.