**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SPENCER MAYHEW and ROSALIE NOREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CANDID COLOR SYSTEMS, INC., an Oklahoma corporation,<br><br>Defendant. | Case No. 5:24-CV-00814-JD<br><br>Hon. Judge Jodi W. Dishman |

**OPENING BRIEF IN SUPPORT OF DEFENDANT CANDID COLOR SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) AND TO STRIKE CLASS ALLEGATIONS PURSUANT TO RULES 12(F) AND 23(D)(1)(D)**

# TABLE OF CONTENTS


Page

I. BACKGROUND ..... 1

A. The Illinois Biometric Information Privacy Act ..... 1

B. The Parties ..... 2

C. Plaintiffs' Allegations ..... 3

D. CCS's Ecommerce Platform ..... 5

II. ARGUMENT ..... 6

A. The Court Should Dismiss Plaintiffs' SAC Under Rule 12(b)(6) For Failure To State A Claim ..... 6

1. Legal Standard ..... 6

2. Plaintiffs' BIPA Claims Violate The Extraterritoriality Doctrine Because Plaintiffs Do Not Allege That CCS's Relevant Conduct Occurred "Primarily And Substantially" In Illinois ..... 7

B. In The Alternative, The Court Should Strike Plaintiffs' Class Allegations Pursuant To Rule 12(f) And Rule 23(d)(1)(D) ..... 11

1. Legal Standard ..... 11

2. The Putative Class Is Overly Broad ..... 13

3. Plaintiffs' Class Definition Makes Identification Of Putative Members Impossible ..... 17

4. Common Issues Do Not Predominate ..... 20

5. A Class Action Is Not Superior ..... 25

III. CONCLUSION ..... 26

# TABLE OF AUTHORITIES

## Federal Cases

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7

*In Re Atlas Roofing Corp. Chalet Shingle Prods. Liability Litig.*, 2017 WL 2540822 (N.D. Ga. June 9, 2017) ........................................................................ 18

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 7

*Bhavilai v. Microsoft Corp.*, 716 F. Supp. 3d 640 (N.D. Ill. 2024) .................................. 17

*Campana v. Nuance Commc'ns, Inc.*, 2024 WL 2809838 (N.D. Ill. Mar. 8, 2024) ........7-9

*Cashatt v. Ford Motor Co.*, 2020 WL 1987077 (W.D. Wash. Apr. 27, 2020) ................. 12

*Castelaz v. Estee Lauder Companies, Inc.*, 2024 WL 136872 (N.D. Ill. Jan. 10, 2024)... 14

*Cline v. Sunoco, Inc. (R&M)*, 159 F.4th 1171 (10th Cir. 2025) ............................ 12, 17, 25

*Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) .......14-15

*Davis v. TXO Prod. Corp.*, 929 F.2d 1515 (10th Cir. 1991) ............................................... 6

*Edwards v. Zenimax Media Inc.*, 2012 WL 4378219 (D. Colo. Sept. 25, 2012) .........12-13

*Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257 (D. Colo. 2023) ............................... 15

*G.T. v. Samsung Elecs. Am., Inc.*, 186 F.4th 470 (7th Cir. 2026) ..................................... 21

*G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788 (N.D. Ill. 2024) ..........14-15, 17, 24

*Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147 (1982) ........................................................ 15

*Harwood v. Uponor, Inc.*, 2026 WL 1078685 (E.D. Okla. Apr. 9, 2026) ......................... 22

*Hogan v. Amazon.com, Inc.*, No. 21-CV-03169, 2026 WL 3408890 (N.D. Ill. Nov. 10, 2026) ........................................................................ 16, 19-20, 25

*Kauffman v. The Home Depot*, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024) ..................... 11

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) .................................................. 13

*Low v. Chu*, 2009 WL 4582312 (N.D. Okla. Dec. 1, 2009) .............................................. 21

*Martell v. X Corp.*, 2024 WL 3011353 (N.D. Ill. June 13, 2024) .................................... 21

*McGoveran v. Amazon Web Servs., Inc.*, 175 F.4th 434 (3d Cir. 2026) ........................ 8, 12

*McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089 (D. Del. Sept. 30, 2021) .................................................................................................... 6, 9, 12-13

*Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79 (D. Kan. 2024)............................ 22

*Monroy v. Shutterfly, Inc.*, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017).......................... 8

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625 (W.D. Wash. 2002)....................................................................................................... 16

*Ramsay v. Frontier, Inc.*, 2020 WL 4557545 (D. Colo. July 30, 2020)........................... 15

*Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017) .................................... 8, 14

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009)......................................... 21

*Shaw v. Hyatt Int'l Corp.*, 2005 WL 3088438 (N.D. Ill. Nov. 15, 2005)......................... 14

*Sloan v. Anker Innovations*, 2025 WL 2104559 (N.D. Ill. July 28, 2025)........................ 20

*Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339 (N.D. Ill. 2021) ........................................... 13

*Svoboda v. Amazon.com, Inc.,* 168 F.4th 956 (7th Cir. 2026)......................................... 23

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ............................................. 21

*Vance v. Google LLC*, 2024 WL 1141007 (N.D. Cal. Mar. 15, 2024)............................. 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................20-21

*Warnick v. Dish Network LLC*, 301 F.R.D. 551 (D. Colo. 2014).................................... 22

*Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir.)............................................. 15

**State Cases**

*Avery v. State Farm*, 835 N.E.2d 801 (Ill. 2005)........................................................ 8, 13

*Freshour v. Cerence, Inc.*, Case No. 2023-CH-2866, Opinion & Order (Cook Cnty., Ill. Cir. Ct. July 17, 2026) ........................................................................22-24

*Landau v. CNA Fin. Corp.*, 886 N.E.2d 405 (Ill. App. 2008) .......................................... 8

*Moore v. Radae*, 2026 IL App (5th) 240795-U .............................................................. 20

*Smith v. Illinois Cent. R.R. Co.*, 860 N.E.2d 332 (Ill. 2006) .......... 22

**State Statutes**

740 ILCS 14/1 .......... 4, 8

740 ILCS 14/5 .......... 1-2

740 ILCS 14/10 .......... 2, 11, 17

740 ILCS 14/15 .......... 2, 5, 17

Illinois Biometric Information Privacy Act .......... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 7

Fed. R. Civ. P. 12(b)(6) .......... 1, 6-7, 15

Fed. R. Civ. P. 23(b)(3) .......... 25

Fed. R. Evid. 201(b) .......... 3

Plaintiffs Spencer Mayhew and Rosalie Noren have filed a Second Amended Complaint ("SAC") against Oklahoma-based Candid Color Systems, Inc. ("CCS") for alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"). As stated in CCS's motions to dismiss filed in response to Plaintiffs' initial and first amended complaints, this is the second forum in which Plaintiffs allege that CCS violated BIPA. Plaintiffs previously filed this case in the U.S. District Court for the Southern District of Illinois. It rightly dismissed that action for lack of personal jurisdiction. Plaintiffs then refiled a case in this Court, but their new forum choice – and their allegations in the SAC – should yield the same result of dismissal. Plaintiffs fail to state a viable claim, and for numerous reasons, this Court should dismiss the SAC with prejudice under Rule 12(b)(6).

In the alternative, the Court should strike Plaintiffs' class allegations. The SAC show that the proposed class is not certifiable because Plaintiffs' class definition is overbroad, identifying class members would be impossible, and individualized inquiries as to whether Plaintiffs or CCS could identify class members (by name or otherwise) such that they may have colorable BIPA claims would predominate over any common issues.

## I. <u>BACKGROUND</u>

### A. The Illinois Biometric Information Privacy Act

In 2008, the Illinois General Assembly enacted BIPA – a statute that regulates the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry" and defines "biometric information" to mean "any information, regardless of how it is captured,

converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. For brevity, this brief refers to biometric identifiers and information, individually and collectively, as "biometric data" or "biometrics."

As relevant here, § 15(a) of BIPA requires private entities "in possession of" biometric data to develop and comply with a publicly available "retention schedule and guidelines" for destroying biometrics "when the initial purpose for collecting or obtaining such [data] has been satisfied or within 3 years of the individual's last interaction with the [entity], whichever occurs first." 740 ILCS 14/15(a). Section 15(b) provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" biometrics unless it first obtains a "written release" from the subject. 740 ILCS 14/15(b).

**B. The Parties**

CCS is an Oklahoma-based photography business that provides its customers (*i.e.*, professional photographers) with various products and services, including software that photographers can use to upload, organize, and sell their photographs to their end-user customers.[1] *See* ECF No. 50, SAC ¶¶ 10, 23; *id.* ¶ 4 ("[CCS] provides an online platform for the marketing and sale of photos taken at school graduation ceremonies and youth sporting events (among other types of events)."). CCS's primary business is to manufacture

---

[1] For purposes of CCS's software products, CCS customers are photographers who use the software to operate their photography businesses. These professional photographers interact directly with end-user consumers (*i.e.*, individuals being photographed, along with their relatives, friends, etc. who may wish to purchase the photos). CCS interacts directly only with its professional-photographer customers – not end users. To avoid confusion, in this Motion the term "customer" refers to a professional photographer who has used CCS's software, and the term "end user" refers to an individual who has been photographed by a CCS customer (or a consumer who has purchased photos taken by a CCS customer).

photos out of its Oklahoma photo lab by, for example, providing photofinishing services. *See* https://www.candid.com/ (quoted at SAC ¶ 21).

Plaintiffs claim CCS's platform uses "facial recognition technology," which "can identify facial images in a particular photograph and locate potentially matching facial images among other photographs in a gallery." SAC ¶ 5. Plaintiffs claim this technology is integrated into CCS's web-based "Ecommerce platform" product and that the "facial recognition feature is made possible only through the collection of biometrics." *Id.* ¶ 25.

Non-party Kabance Photo Services, Inc. ("Kabance") was a Missouri-based[2] photography business and CCS customer who used the Ecommerce platform to upload, organize, and sell its photographs to end users in connection with events (*e.g.*, graduation ceremonies) at which schools wished to hire a professional photographer(s). *Id.* ¶¶ 4, 53. Mayhew and Noren are Illinois residents who claim they were photographed "by photographers working on behalf of Kabance" in May 2023 and May 2021, respectively, and that their images were then uploaded to the Ecommerce platform. *See id.* ¶¶ 55, 67.

### C. Plaintiffs' Allegations

Mayhew claims that Kabance photographers, "as part of the Grad Photo Network," photographed him during his graduation from Collinsville High School. *Id.* ¶¶ 47, 54-55. Kabance then uploaded the photos to the Grad Photo Network ("GPN") website and emailed Mayhew's mother a link she could use to view and purchase his graduation photos. *Id.* ¶¶ 55, 61-62. (Mayhew does not explain how the photographers obtained his mother's

---

[2] *See* Missouri Secretary of State, *Business Entity Details for KABANCE PHOTO SERVICES, INC.* (**Ex. 1**); *see also* Fed. R. Evid. 201(b).

email address.) According to Mayhew, when viewing the photos on the GPN website, a "dotted-line rectangular field automatically appears around [his] face." *Id.* ¶ 57. Mayhew alleges that the appearance of this "rectangular field" indicates that CCS's Ecommerce platform "extracted [his] faceprint" and "therefore collected [his] biometrics." *Id.* ¶ 60. Noren similarly claims that Kabance photographers, "as part of the [GPN]," photographed her during her graduation from Blackburn College, uploaded the photos to the GPN website, and later may have emailed her "soliciting her to purchase the photos." *Id.* ¶¶ 66-67, 73. (Noren does not explain how the photographers may have obtained her email address.) Like Mayhew, Noren alleges that the photos on the GPN website depict a "dotted-line" rectangle "around [her] face," allegedly indicating that the Ecommerce platform "extracted [her] faceprint" and "therefore collected [her] biometrics." *Id.* ¶¶ 70, 72.

Based on these allegations, Plaintiffs allege CCS violated BIPA by: [i] failing to develop or comply with a public retention schedule regarding the storage of biometrics, in alleged violation of § 15(a), *e.g.*, *id.* ¶ 104; [ii] collecting Plaintiffs' biometrics without providing the requisite notice and obtaining their written consent, in alleged violation of § 15(b), *e.g.*, *id.* ¶¶ 112, 120, 128; and [iii] "profit[ing] from the biometrics of Plaintiffs…by using [them] to facilitate the sale of photographs," in alleged violation of § 15(c), *id.* ¶ 136.

Plaintiffs previously sought certification of a class of "[a]ll residents of…Illinois whose biometric [data] were collected, captured, purchased, received through trade, or otherwise obtained by, or profited from by [CCS] while residing in Illinois." ECF No. 1, Compl. ¶ 69; ECF No. 25, First Am. Compl. ("FAC") ¶ 77. Plaintiffs' SAC attempts to expand the class by redefining it as "[a]ll residents of...Illinois depicted in photos that were

taken within the State of Illinois and that had [CCS's] facial recognition technology applied to them between August 8, 2019, and the date notice is disseminated." SAC ¶ 91.

**D. CCS's Ecommerce Platform**

The SAC refers to CCS's web-based software product that includes a customizable "Ecommerce" platform used by photographers. *E.g.*, *id.* ¶¶ 22-23 (alleging CCS offers "a web-based 'Ecommerce platform'" that includes features that photographers can use "from an onsite computer or mobile device"). Photographers can configure the Ecommerce platform to fit their needs, including by changing the appearance and functionality of the consumer-facing webpages associated with their accounts; creating personal, team, class, and/or event galleries; and electing to use one or more optional software features. *See id.* ¶ 21 (alleging that CCS "connect[s] photographers with innovative products and workflow solutions" and that CCS's tools "help [photographers] effectively market and sell images from events both small and large"). As reflected in the SAC, CCS customers (rather than CCS) control the photos that customers elect to take and upload to the Ecommerce platform (including the location in which any end users are photographed), and any decision as to how customers sort their photos are made by the customers. *See id.* ¶ 24.

To organize, manage, and sell their photos using the Ecommerce platform, customers first upload their images to their Ecommerce accounts. *Id.* ¶¶ 53, 67. Customers can then sort the photos and make them available online for viewing and purchase. *Id.* ¶¶ 56, 68. Sorting photos this way allows photographers to present online galleries to end users containing photographs of the individual in which they are interested. *Id.* Customers have been able to use an optional "facial recognition feature" to sort their photos. *Id.* ¶ 23.

This is one of many tools customers can use through the Ecommerce platform. *Id.* ¶ 21.

The SAC reflects that Mayhew was photographed four times during a May 13, 2023, graduation ceremony in Collinsville, Illinois, and that a photographer affiliated with Kabance – a business based in St. Louis, Missouri – took the photos of Mayhew and uploaded them to Kabance's Ecommerce account.[3] *Id.* ¶¶ 55, 64; Ex. 2 (webpage containing proofs of photos listing Kabance's Missouri address). In addition, the SAC reflects that Noren was photographed six times during a graduation held at Blackburn College in Carlinville, Illinois, and that a photographer affiliated with Kabance took the photos of Noren and uploaded them to Kabance's Ecommerce account.[4] SAC ¶ 67; Ex. 3.

## II. ARGUMENT[5]

### A. The Court Should Dismiss Plaintiffs' SAC Under Rule 12(b)(6) For Failure To State A Claim

#### 1. Legal Standard

Rule 12(b)(6) requires dismissal when a plaintiff "fail[s] to state a claim upon which

---

[3] The photographs of Mayhew appear in the screenshot attached as **Exhibit 2**. The Court can consider this in ruling on CCS's Motion because the SAC repeatedly refers to the photographs by describing how, when, and where they were taken, how they were uploaded to the platform, and how they appeared when viewed online. SAC ¶¶ 54-57; *see, e.g.*, *McGoveran v. Amazon Web Servs.*, 2021 WL 4502089, at *4 n.3 (D. Del. Sept. 30, 2021) (where complaint "cite[d] the AWS website multiple times," court could consider relevant documents depicted on that website under the incorporation-by-reference doctrine).

[4] The photographs of Noren appear in the screenshot attached as **Exhibit 3**. The Court can consider this document in ruling on CCS's Motion for the reasons stated in footnote 3.

[5] CCS incorporates Part III.A of its motion to dismiss Plaintiffs' FAC (ECF No. 28 at 9-10) and submits that the Court should dismiss the § 15(c) claim for the reasons stated in the Court's June 11, 2025, Order. CCS also incorporates all Rule 12(b)(6) arguments from its motion to dismiss Plaintiffs' FAC, which are equally applicable to the SAC. While the Court denied the Rule 12(b)(6) portion of that motion, CCS reasserts them here to prevent any future dispute over whether the Court's prior denial of any part of CCS's motion may be challenged on appeal. *See Davis v. TXO Prod.*, 929 F.2d 1515, 1516-18 (10th Cir. 1991).

relief can be granted." To plead a viable cause of action, allegations must transcend the "speculative," "conceivable," and "possible," and must "state a claim that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). The Court must disregard "legal conclusions" and scrutinize factual allegations to ensure they are more than "merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009).

### 2. Plaintiffs' BIPA Claims Violate The Extraterritoriality Doctrine Because Plaintiffs Do Not Allege That CCS's Relevant Conduct Occurred "Primarily And Substantially" In Illinois

For similar reasons that the Southern District of Illinois correctly held that it lacked personal jurisdiction over CCS under the facts alleged, the SAC should be dismissed under Illinois's extraterritoriality doctrine. BIPA was not "intended to have extraterritorial effect," *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017), and therefore "asserted violations…must have taken place in Illinois" to fall within the statute. *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017). CCS could be subject to BIPA only if "the majority of circumstances relating to the alleged violation[s]" occurred in Illinois. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008); *see Avery v. State Farm*, 835 N.E.2d 801, 853 (Ill. 2005) ("the circumstances relating to the claim [must have] occur[ed] primarily and substantially" in Illinois).

Plaintiffs' claims fail because Plaintiffs have not alleged, and cannot allege, that CCS engaged in ***any*** relevant conduct in Illinois. There is no dispute that BIPA "applies only to conduct within" Illinois. *McGoveran v. Amazon Web Servs.*, 175 F.4th 434, 441 (3d Cir. 2026). Under extraterritoriality principles, BIPA violations only occur in Illinois where the alleged BIPA-violating conduct takes place in Illinois. *See Campana v. Nuance*

*Commc'ns*, 2024 WL 2809838, at *2 (N.D. Ill. Mar. 8, 2024) (dismissing complaint where "plaintiffs fail[ed] to allege any conduct ***on the part of [defendant]*** that support[ed] its allegation that the plaintiffs' biometric information was 'actually collected in Illinois'") (emphasis added). Here, Plaintiffs have not identified ***any*** conduct by CCS in Illinois implicating BIPA. The reason is obvious: Plaintiffs ***cannot*** plausibly make such allegations given that the photos were taken by Kabance (not CCS), are owned by Kabance (not CCS), and were uploaded to the Ecommerce platform by Kabance (not CCS) from Missouri.

Plaintiffs instead point repeatedly to their own conduct in Illinois or to conduct of a third party (*i.e.*, Kabance) to try to show a relevant Illinois connection, but that cannot remedy their extraterritoriality problem. Plaintiffs allege they are residents of Illinois. SAC ¶¶ 8-9. But a "plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." *McGoveran*, 2021 WL 4502089, at *4 (collecting cases). Plaintiffs further allege that their photos were taken while they were in Illinois. SAC ¶¶ 54-55, 66-67. These allegations – that Plaintiffs are Illinois residents who were photographed at ceremonies in Illinois – are the ***only*** Illinois-specific factual allegations regarding the conduct underlying their BIPA claims. Plaintiffs do not plausibly allege that their photographs were uploaded to the Ecommerce platform from Illinois or that any other part of the relevant process took place in Illinois. Plaintiffs claim they lack "knowledge as to where the photos were uploaded to the [GPN] Website or scanned for biometrics, but…it reasonably can be inferred that the photos may have been uploaded or scanned for biometrics in Illinois." *Id.* ¶¶ 55, 67. This is insufficient. For one, even ***if*** Plaintiffs adequately alleged that non-party Kabance uploaded their photos from

Illinois, that would not show that ***CCS*** engaged in any relevant in-state conduct. *See Campana*, 2024 WL 2809838, at *2 (plaintiffs failed to allege relevant in-state conduct ***by defendant***). CCS is at least two steps removed, as: [i] it was Missouri-based Kabance who photographed Plaintiffs, *see* SAC ¶¶ 55, 67; and [ii] it was Missouri-based Kabance who uploaded the photos and used the "facial recognition" tool to sort them (presumably from Missouri). *See id.* Such conduct by others fails to suggest any conduct ***by CCS*** occurring primarily and substantially in Illinois. *See McGoveran*, 2024 WL 4626253, at *5 (D. Del. Oct. 30, 2024) ("Amazon conceded that it has some Illinois activities. But those activities are not related to 'the disputed transactions in this case,' which 'occurred outside of Illinois.' So those contacts with Illinois are irrelevant.") (cleaned up).[6] Furthermore, Plaintiffs cannot meet Rule 8's pleading standard by speculating that "the photos ***may have been*** uploaded or scanned…in Illinois." SAC ¶¶ 55, 67 (emphasis added). Nor can it "reasonably be inferred" from Paragraphs 22 and 31 of the SAC – which do not reference conduct occurring in Illinois – that Kabance uploaded the photos from Illinois.

Plaintiffs also try to allege a relevant Illinois connection by [i] pointing to the Terms and Conditions posted on the GPN website as purported support for Plaintiffs' (mis)characterization that CCS "exercises control over orders that are placed through the [GPN] website"; and [ii] pointing to the Privacy Policy posted on the same website in trying to show that CCS "exercises control over the [GPN] website and orders placed through

[6] *See also McGoveran*, 175 F.4th at 442 (affirming summary judgment for Amazon on extraterritoriality grounds; "[p]laintiffs argue that the District Court erred by focusing on 'the geographic location of Amazon's servers rather than the location of the harmed [p]laintiffs.' But the District Court's emphasis was spot on.").

[it]." *Id.* ¶¶ 49-52. Plaintiffs' attempts fail.

Plaintiffs' reliance on the online Terms and Conditions and Privacy Policy – which refer to CCS's purported role in processing payments for orders and delivering purchased photographs to the end users of CCS customers, *id.* ¶¶ 51-52 – is a red herring. Importantly, Plaintiffs' alleged injuries in this case involve the collection, storage, and use of their biometric "faceprint[s]," *id.* ¶ 27, which occurred (if at all) when Kabance used its Ecommerce account to sort its photos by end user – a process [i] that took place before Plaintiffs' ***photographs*** (which are undisputedly ***not*** biometrics under BIPA, *see* 740 ILCS 14/10) could be viewed or purchased through the GPN website and [ii] that has no connection to whether an end user purchases a photo. *Cf. Kauffman v. Home Depot*, 2024 WL 221434, at *1, 3 (S.D. Cal. Jan. 19, 2024) (court lacked personal jurisdiction because plaintiff did not "show that any claim 'arises out of or relates to' defendant's forum-related activities" and explaining that a company "expressly aiming" conduct at a forum state by "[selling] a physical product to a consumer in th[at] state via an interactive website" does ***not*** mean the company aimed conduct at the state regarding "'the extraction of consumer data' that forms the basis of privacy-related claims"). That the end-user purchaser in this case was Ms. Mayhew, a non-party, further underscores the lack of any connection between the collection of Plaintiffs' "faceprint[s]" and the sale of photos to Illinois end users. *See* SAC ¶¶ 61-62. Put another way, an entity shipping photos to end users in Illinois is unrelated to the alleged collection or possession of Plaintiffs' biometrics.

This is why Plaintiffs' claims against CCS were dismissed for lack of personal jurisdiction, and this Court should dismiss the claims for similar reasons under the

extraterritoriality doctrine. *See McGoveran*, 2021 WL 4502089, at *5 (recognizing that Southern District of Illinois's prior dismissal for lack of personal jurisdiction "underscores the weak connection between [p]laintiffs' allegations and Illinois").

Plaintiffs seek to extend BIPA well beyond its geographic boundaries. As Plaintiffs would have it, a company based in Oklahoma (CCS) can be held liable under an Illinois statute for providing an online platform from Oklahoma based on photos being uploaded to the platform by a Missouri company (Kabance) simply because the (non-biometric) photos happen to include images of Illinois residents. That plainly violates the prohibition against the extraterritorial application of Illinois's laws. Hence, this Court should dismiss the SAC because Plaintiffs do not allege that any CCS conduct occurred "primarily and substantially" in Illinois, nor do they have a good faith basis to do so. *See Vance v. Google LLC*, 2024 WL 1141007, at *3 (N.D. Cal. Mar. 15, 2024) ("Plaintiffs have not plausibly alleged any 'direct interaction' with Google that could plausibly be imputed to Illinois such that it would 'g[i]ve rise to the alleged BIPA violations.'").

### B. In The Alternative, The Court Should Strike Plaintiffs' Class Allegations Pursuant To Rule 12(f) And Rule 23(d)(1)(D)

#### 1. Legal Standard

Even if the SAC were not subject to dismissal under Rule 12(b)(6) (it is), the Court should at minimum strike the SAC's class allegations. Under Rule 12(f), the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." See also Fed. R. Civ. P. 23(d)(1)(D) (courts may "require that the pleadings be amended to eliminate allegations about representation of absent persons"). Courts may resolve class

claims at the pleading stage if it is "plain enough from the pleadings" that the proposed class cannot be certified. *See Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982).[7] Courts ruling on a motion to strike class allegations "consider only the pleadings and matters subject to judicial notice" and "view the allegations in the light most favorable to the pleader." *Cashatt v. Ford*, 2020 WL 1987077, at *4 (W.D. Wash. Apr. 27, 2020).

For the damages class Plaintiffs seek to represent, Plaintiffs must satisfy the four Rule 23(a) factors (*i.e.*, numerosity, commonality, typicality, and adequacy) ***and*** show that Rule 23(b)(3)'s predominance and superiority requirements are satisfied. *See Cline v. Sunoco, Inc. (R&M)*, 159 F.4th 1171, 1184-85 (10th Cir. 2025). If, in response to a motion to strike, a plaintiff demands discovery, he or she must show that discovery is "likely to yield persuasive information substantiating the class allegations." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 630 (W.D. Wash. 2002).

Here, the four corners of the SAC show that Plaintiffs' proposed class cannot be certified. The Court should strike Plaintiffs' class allegations, hold that Plaintiffs' proposed class definition (*i.e.*, "[a]ll residents of the State of Illinois depicted in photos that were taken within the State of Illinois and that had [CCS's] facial recognition technology applied to them," SAC ¶ 91) is overbroad and facially deficient, and reject any possible class certification as a matter of law for three reasons. ***First***, Plaintiffs' putative class is

[7] *See also, e.g.*, *Ramsay v. Frontier, Inc.*, 2020 WL 4557545, at *1 (D. Colo. July 30, 2020) (striking class allegations at pleadings stage); *Edwards v. Zenimax Media Inc.*, 2012 WL 4378219, at *5 (D. Colo. Sept. 25, 2012) (same); *Faulhaber v. Petzl Am.*, 656 F. Supp. 3d 1257, 1275 (D. Colo. 2023) ("[I]t is appropriate to strike class allegations where 'it is apparent from the pleadings…that the definition…is overbroad.'").

overbroad and encompasses individuals who lack valid BIPA claims (*e.g.*, individuals who ***cannot be identified*** by CCS (or anyone else); individuals depicted in photos that were uploaded to the Ecommerce platform from outside of Illinois; individuals whose "faceprints" were not collected or possessed ***by CCS***). ***Second***, Plaintiffs cannot satisfy Rule 23's implicit ascertainability requirement because their class definition makes identification of putative class members impossible. ***Third***, Plaintiffs' theory shows that individualized inquiries necessarily predominate over "[c]ommon questions of law or fact arising from [CCS's] conduct," *id.* ¶ 93. Because the alleged class cannot possibly satisfy Rule 23, the Court should strike Plaintiffs' class allegations without leave to amend.

**2. The Putative Class Is Overly Broad**

Before considering Rule 23's requirements, courts first determine whether a proposed class definition is adequate. *See Edwards*, 2012 WL 4378219, at *4. In *Edwards*, the court held that the proposed class of all Colorado residents "who purchased any version of the *Elder Scrolls IV: Oblivion video game*" was "overbroad and includes Colorado residents who presumably purchased Oblivion from anyone, anywhere, at any time regardless of whether he or she…even experienced the alleged Defect." *Id.*

Plaintiffs' class definition fails for similar reasons. Specifically, it is overbroad because it includes people who cannot be identified (by name or otherwise) and who thus lack actionable BIPA claims; people depicted in photos taken in Illinois but uploaded to the Ecommerce platform from another state; and people depicted in photos to which CCS's purported "facial recognition technology" may have been "applied," even if ***CCS*** never obtained any biometrics that may have been generated through the use of the technology.

***First***, the proposed class impermissibly includes individuals who have not been subject to a BIPA violation because they cannot be identified. Plaintiffs' claims arise under BIPA, which regulates the possession and collection of six "biometric identifiers" – fingerprints, voiceprints, retina scans, iris scans, and scans of hand and face geometry – as well as "biometric information," defined as information derived from a biometric identifier that is used to identify a person. 740 ILCS 14/10, 15. Even if a particular data point is one of the six listed items, it does not qualify as a biometric identifier unless it "could be used to identify" an individual. *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1124-25 (9th Cir.). Even taking as true the claim that CCS's image-matching tool involves the creation of geometric "faceprints," SAC ¶ 27, such faceprints are not biometric identifiers if they cannot be used to identify anyone. *See Zellmer*, 104 F. 4th 1117, at 1125 (technology that cannot identify individuals does not fall within BIPA's scope); *G.T. v. Samsung*, 742 F. Supp. 3d 788, 799 (N.D. Ill. 2024) (following cases "that require biometric information to be capable of recognizing an individual's identity, not simply an individual's feature"); *Castelaz v. Estee Lauder*, 2024 WL 136872, at *6-7 (N.D. Ill. Jan. 10, 2024) (complaint lacked "factual allegations that [defendant] is capable of determining [p]laintiffs and members of the Illinois class members' identities by using the collected facial scans"). To establish liability, then, each class member must show that at least one of their "faceprints" provided CCS sufficient information to identify them. *See Zellmer*, 104 F.4th at 1123-26.

As stated in *Daichendt v. CVS Pharmacy, Inc.*, "plaintiffs must allege that defendant's collection of their biometric data made defendant *capable of* determining their identities." 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022). The court in *Daichendt* held

plaintiffs failed to meet this burden because they did not allege CVS had any information, "such as their names or physical or email addresses, that could connect the voluntary scans of face geometry with their identities." *Id.* Plaintiffs thus "failed to plead the most foundational aspect of a BIPA claim" – the ability to identify an individual. *Id.*[8]

Here, the SAC establishes that the image-matching tool cannot identify individuals appearing in photos uploaded to the Ecommerce platform. Rather, Plaintiffs allege only that the tool can group unidentified faces together and that photographer-customers ***may*** (or may not) try to tie identifying information to certain faces. *See* SAC ¶ 5 (CCS's software can "identify ***facial images*** in a particular photograph and ***locate potentially matching facial images*** among other photographs in a gallery") (emphases added); *id.* ¶¶ 27-28 (alleging "[u]pon information and belief" that CCS's software "extract[s] data representing the unique geometry of each facial image in each photograph," which can then "be used to locate other photographs that are likely to contain the same face"). These allegations are "insufficient to show that the [purported 'faceprints'] constitutes either a biometric identifier or biometric information." *G.T.*, 742 F. Supp. 3d at 801. Plaintiffs' class definition should therefore be stricken because it is comprised of unidentifiable individuals.

***Second***, Plaintiffs' class definition is not sufficiently linked to any relevant in-state conduct. Plaintiffs seek to represent Illinois residents "depicted in photos ***that were taken within the State of Illinois***." SAC ¶ 91 (emphasis added). But a person appearing in a photo

---

[8] The amended complaint in *Daichendt* alleged that plaintiffs submitted "their names, email addresses, and phone numbers into a computer terminal inside defendant's stores prior to scanning their biometric identifiers," which was sufficient to survive CVS's subsequent motion to dismiss. *Daichendt*, 2023 WL 3559669, at *1 (N.D. Ill. May 4, 2023).

that was taken in Illinois and was subsequently uploaded to the Ecommerce platform from another state has no colorable BIPA claim because the conduct surrounding any alleged collection of biometrics would lack the requisite Illinois nexus. *See, e.g.*, *Moore v. Radae*, 2026 IL App (5th) 240795-U, ¶ 44 (Illinois's extraterritoriality test "requires a court 'to determine whether the bulk of the circumstances supporting the elements of the cause of action occurred primarily and substantially in Illinois'"). Simply put, where Plaintiffs may have been photographed is unrelated to the elements of Plaintiffs' §§ 15(a) and 15(b) claims – even if the non-biometric photos were later used to generate "scans of face geometry." *Cf. Sloan v. Anker Innovations*, 2025 WL 2104559, at *4-5 (N.D. Ill. July 28, 2025) (plaintiffs satisfied extraterritoriality doctrine by alleging that "the eufy products perform[] facial recognition themselves [in Illinois]" and contrasting hypothetical where "photos did not become biometric identifiers ***until they were outside of Illinois*** in the…cloud servers") (emphasis added).[9]

***Third***, Plaintiffs' class impermissibly encompasses individuals "depicted in photos…that ***had [CCS's] facial recognition technology applied to them***," SAC ¶ 91 (emphasis added), regardless of whether CCS collected or possessed biometrics. It is well established that BIPA does not apply to an entity that does not directly collect biometrics

[9] The recent decision in *Hogan v. Amazon.com, Inc.* (discussed below) also shows that Plaintiffs' class definition fails because it contains unidentifiable people and is untethered to relevant in-state conduct. *Hogan* denied certification as to a class of people who did not open Amazon accounts because Amazon could not identify such "non-users." As for the "user" class for which the court granted class certification, the court "modified…plaintiff's proposed User Class" to "clarif[y] that the ***uploading of the photo must have occurred in Illinois***." *Hogan*, 2026 WL 3408890, at *19 (N.D. Ill. Nov. 10, 2026) (emphasis added).

but only makes "facial recognition technology" available for others to use. *See, e.g.*, *G.T. v. Samsung*, 186 F.4th 470, 476 (7th Cir. 2026) (allegations "fell short of plausibly alleging that Samsung in fact controlled the biometric data"; "[a]lthough [p]laintiffs describe how Samsung provided users with the products (the phones and tablets) and software (the App) to record, create, and save facial biometric data on the individual devices, they allege nothing from which we can reasonably infer that Samsung itself controlled the data"); *Bhavilai v. Microsoft*, 716 F. Supp. 3d 640, 641 (N.D. Ill. 2024) (plaintiff failed to allege BIPA claim by claiming defendant "exercised control over the device users' ability to access and use the facial scan software" because "control of the facial scan software is not the same as control of the facial scan data that is collected using the software"). Accordingly, an entity other than CCS applying CCS's software to that entity's photos does not mean CCS collected or possessed any biometrics. *See id.* Plaintiffs' class definition is facially deficient because it sweeps in people without colorable BIPA claims and is divorced from the elements of Plaintiffs' §§ 15(a) and 15(b) claims. The Court should therefore strike Plaintiffs' proposed class definition.

**3. Plaintiffs' Class Definition Makes Identification Of Putative Members Impossible**

To satisfy Rule 23, a plaintiff must show that the proposed class is ascertainable. *See, e.g.*, *Cline*, 159 F.4th at 1184-85; *see also Low v. Chu*, 2009 WL 4582312, at *3, n.5 (N.D. Okla. Dec. 1, 2009) ("The existence of an ascertainable class of persons…is an implied prerequisite of" Rule 23). "If class members are impossible to identify without extensive and individualized fact-finding or mini-trials,' then a class action is

inappropriate." *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 556 (D. Colo. 2014); *see also Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79, 92 n.21 (D. Kan. 2024) (citing cases where ascertainability requirement was not met because, *inter alia*, "documentation" identifying class members was "less likely to be available"). In short, Plaintiffs must show that class members can "ultimately be identified (*i.e.,* they are ascertain-*able* but not necessarily ascertained at the time of class certification) using 'reasonable – but not perfect – accuracy.'" *Harwood v. Uponor*, 2026 WL 1078685, at *2-3 (E.D. Okla. Apr. 9, 2026).

Here, Plaintiffs' allegations show that ***no*** amount of fact finding would allow Plaintiffs, CCS, or the Court to identify all Illinois residents "depicted in photos that were taken within…Illinois and that had [CCS's] facial recognition technology applied to them within the applicable limitations period." SAC ¶ 91. To illustrate, Plaintiffs' class includes: individuals depicted in photos for whom a CCS photographer-customer never obtained (let alone uploaded) any identifying information; individuals for whom a CCS customer never obtained ***accurate*** identifying information; and "bystanders" who happen to appear in the background of photos (for example, the "other graduates" and/or "school officials" referenced in Paragraph 71 of the SAC). Nor is it possible to determine whether any photographed individuals are Illinois "residents" – particularly where Plaintiffs do not specify ***when*** individuals must have been Illinois residents (*e.g.*, when their photos were taken, when their photos were uploaded, or some other time). Simply put, Plaintiffs cannot satisfy the ascertainability requirement because the proposed class is comprised of unidentifiable individuals. *See In Re Atlas Roofing Corp. Litig.*, 2017 WL 2540822, at *8 (N.D. Ga. June 9, 2017) (plaintiffs failed to show that identifying defective shingles was

feasible because defendant did not sell them directly to owners and plaintiff could not explain how class members could be ascertained).

Further demonstrating that Plaintiffs' class is unascertainable is a Northern District of Illinois decision issued only three days ago. *See Hogan v. Amazon.com, Inc.*, No. 21-CV-03169, 2026 WL 3408890 (N.D. Ill. Nov. 10, 2026). *Hogan* involved the "Amazon Photos" mobile application "for storing digital photographs," which included an optional "image recognition feature." *Id.* at *1. When enabled, the feature detected an image of a face within a photo "and then generate[d] a string of numbers, called an 'embedding,' associated with the image," which was used to "associat[e] similar embeddings" such that "images of the same person can be grouped (sometimes imperfectly)." *Id.* (noting that the technology "uses face embeddings to 'cluster' images without input from the user" and that "[t]he user can assign a label to the clusters, such as a name or nickname, but the app itself does not label people or attempt to associate the images with specific people").

Plaintiffs were Illinois residents Angela Hogan and her young child B.H., for whom Hogan bought an Amazon Fire tablet. *Id.* at *3. To activate the tablet, Hogan entered the email address and password "associated with her Amazon account." *Id.* Hogan subsequently used the image recognition feature and "labeled photo clusters depicting each of her children with their first names" and also "labeled a cluster of photos containing her face as 'Mom.'" *Id.* Plaintiffs claimed Amazon obtained their facial biometrics without their written consent in connection with the feature, in alleged violation of § 15(b).

Plaintiffs moved the court to certify two classes: [i] a "User Class" of "[a]ny Illinois resident whose face appears in a photo stored in their own Amazon Photos account that

had image recognition enabled during the Class Period, where Amazon generated a face embedding from the image of the face"; and [ii] a "Non-User Class" of "[a]ny Illinois resident whose face appears in a photo stored in another Illinois resident's Amazon Photos account that had image recognition enabled during the Class Period, where Amazon generated a face embedding from the image of the face." *Id.* at *8. Critically, the court held that "[a]lthough the User Class is sufficiently concrete and identifiable, the ***Non-User Class is not***. Starting with the latter: A Non-User class is not ascertainable because, as the defendant contends, it is an amorphous and nearly unidentifiable group of people. Amazon does not currently identify the people whose faces appear in photos stored in the app and does not know who the non-users are." *Id.* at *9 (emphasis added). The court noted that:

> The plaintiffs' proposed class of non-users is simply too amorphous to be workable. The Court is mindful that the Seventh Circuit has expressly rejected a requirement that plaintiffs "show a reliable and administratively feasible way to determine whether a particular person is a member of the class." But requiring that it be possible to know who is in a class does not amount to adopting the "heightened ascertainability requirement"….

*Id.* at *10. Plaintiffs' class in this case cannot satisfy the ascertainability requirement for the same reason – namely, Plaintiffs do not allege that people depicted in pictures taken by photographer-customers gave CCS their identifying information or that they opened accounts with CCS. (In fact, Plaintiffs allege that putative class members "never knowingly dealt with CCS." SAC ¶ 30.) The Court should therefore strike Plaintiffs' class allegations.

#### 4. Common Issues Do Not Predominate

To satisfy Rule 23(a)(2)'s commonality requirement, Plaintiffs' claims must "depend upon a common contention" that is "capable of classwide resolution." *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). Where a class action seeks monetary damages, the commonality requirement is subsumed under Rule 23(b)(3)'s more stringent requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 609 (1997). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Common questions are defined by a plaintiff's ability to make a *prima facie* showing using the same evidence. *Id.*

At the pleading stage, courts have stricken class allegations where an element of a plaintiff's claim and case theory involves inherently individualized inquiries. *See, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (granting motion to dismiss and to strike class allegations because court "would be forced to engage in individual inquiries of each class member").

Here, what Plaintiffs characterize as "[c]ommon questions of law or fact arising from [CCS's] conduct," SAC ¶ 93, are actually unique inquiries that could only be answered through individualized questions. For example, determining whether CCS "collected, stored or used the biometrics of Plaintiffs or the Class members," *id.* ¶ 93(a), would require an individual-by-individual inquiry into whether CCS had reliable information capable of identifying a person appearing in an uploaded photo such that CCS may have collected the person's "biometric identifier" or "biometric information." *See, e.g.*, *Martell v. X Corp.*, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024) ("[U]nder a plain reading of BIPA, [p]laintiff must allege that the biometric identifier can be used to

identify an individual."). Importantly, Plaintiffs do not seek to represent a class of only identifiable individuals. Rather, they seek certification of all Illinois residents depicted in photos taken in Illinois that had the image-matching tool "applied to them," SAC ¶ 91, regardless of whether those people can be identified. Simply appearing in the photo is all it takes to make someone a class member, even if there is no conceivable way he or she could be identified by CCS. It follows that an individual inquiry would be necessary as to ***every face*** appearing in a photo to determine whether he or she can be identified. *See id.* ¶ 27 (alleging that CCS's "facial recognition feature works by scanning photographs for facial images and extracting data representing the unique geometry of ***each facial image in each photograph***") (emphasis added).

*Freshour v. Cerence, Inc.* is instructive. In that BIPA case, plaintiffs sued Cerence, a company that provides voice-recognition technology that was integrated into plaintiffs' Mercedes-Benz vehicles. Plaintiffs claimed they activated Cerence's "Mercedes-Benz User Experience" ("MBUX") system, which required them "to repeatedly say 'Hey Mercedes' so the system could learn and recognize their voices." *Freshour*, Case No. 2023-CH-2866, Opinion & Order at 2 (Cook Cnty., Ill. Cir. Ct. July 17, 2026) (attached hereto as **Exhibit 4**).[10] Once activated, the MBUX system would respond to drivers' and passengers' spoken requests (*e.g.*, navigation questions) by capturing, storing, and processing biometric "voiceprints" in violation of BIPA. Plaintiffs moved for class

[10] While *Freshour* analyzed class certification under Section 2-801 of the Illinois Code of Civil Procedure rather than Rule 23, Section 2-801 "is patterned after Rule 23" and "federal decisions interpreting Rule 23 are persuasive authority with regard to the question of class certification in Illinois." *Smith v. Illinois Cent. R.R. Co.*, 860 N.E.2d 332, 336 (Ill. 2006).

certification, arguing that Cerence's conduct was uniform because "the same Cerence technology was integrated into an identifiable subset of Mercedes-Benz vehicles and collected the same type of voice data from class members using the same technology for the same purposes." *Id.* at 3. The court disagreed and denied plaintiffs' motion, concluding that common questions did not predominate over questions affecting only individual members. The court reasoned that common issues did not predominate because Cerence did "not know who use[d] its technology" and "any audio data transmitted to Cerence's cloud [wa]s not accompanied by information identifying the speaker." *Id.* at 5; *see id.* at 7 (predominance lacking because "neither [Cerence] nor [Mercedes-Benz USA] maintains records identifying individuals who actually used the MBUX Voice Assistant").

Plaintiffs similarly do not allege that CCS maintains records accurately identifying people (by name or otherwise) who appear in customer-uploaded photos. Rather, Plaintiffs affirmatively allege that many putative class members "never knowingly dealt with CCS," SAC ¶ 30, underscoring CCS's inability to identify them. This case is therefore unlike *Svoboda v. Amazon.com Inc.*, where the Seventh Circuit affirmed certification of a class of "all individuals who used a [virtual try-on] feature on Amazon's mobile website or app while in Illinois." 168 F.4th 956, 960 (7th Cir. 2026). In that case, Amazon "maintain[ed] [virtual try-on] usage data with accompanying billing address information associated with the user's account" and could thus conceivably identify class members. By contrast, CCS does not maintain that kind of information for people who appear in photos taken and

uploaded by photographer-customers.[11] This case is thus closer to *Freshour* than *Svoboda* and other BIPA cases where the defendants maintained account data for potential class members. *See* Ex. 4 at 8 ("Unlike *Zaluda*, *Doe*, and *Svoboda*, this case involves claims against a third-party technology vendor that does not maintain user accounts for the putative class members. Based on the present record, neither Cerence nor MBUSA maintains the type of user activity data that was available in those cases.").

As for whether any purported violation occurred in Illinois such that BIPA would even apply, the court in *Freshour* held:

> The location of each alleged use presents a separate individualized issue. Plaintiffs' proposed class is limited to use within Illinois, but Cerence argues that vehicle sales records would not establish where the voice assistant was actually used. Specifically, a person may purchase a vehicle in Illinois but use the voice assistant outside Illinois, or may purchase a vehicle outside Illinois and later use it in Illinois. Thus, determining whether a particular person used the technology within Illinois would also require claimant-specific proof.

*Id.* at 6. The same applies here. Determining whether a sufficient Illinois connection exists

---

[11] Plaintiffs do not (and cannot) claim CCS assigns an identity to a person depicted in a photo, validates the identity of any such person, or tries to identify any such person. At most, Plaintiffs allege that non-party photographers ***may*** try to link a face to a specific person. *See* SAC ¶ 31 (alleging CCS maintains "records for tracking photographers' use of the Ecommerce platform. For example, CCS can determine whether photos depicting particular individuals who have been photographed have been uploaded to the Ecommerce platform (so long as the photographer has uploaded information identifying the individuals by name), as well as the identity of the photographer who uploaded the photos"). But BIPA does not regulate technology that merely "groups unidentified faces together" and it is the end user or photographer who may tie identifying information to certain faces. *See G.T.*, 742 F. Supp. 3d at 801 ("Plaintiffs do not allege the App's technology is capable of identifying a person's identity. Rather, [p]laintiffs allege only that the App groups unidentified faces together, and it is the Device user who (has the option to) add names to the faces….[T]hese allegations are insufficient to show that the Data constitutes either a biometric identifier or biometric information.").

would require person-by-person proof regarding, *inter alia*, where a photo was taken and where it was uploaded from. Individualized inquiries also would be needed to determine whether a person is an Illinois resident. In sum, predominance cannot be satisfied because individualized inquiries as to the identification and location of potential class members would "be the object of most of the efforts of the litigants and the court." Ex. 4 at 4-5.[12] Accordingly, the Court should strike Plaintiffs' class allegations.

### 5. A Class Action Is Not Superior

Finally, for this case to proceed on a putative class basis, a class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This "superiority" determination requires courts to consider the "likely difficulties in managing a class action." *Id.* Because Plaintiffs seek to represent a class of unidentifiable people with no relationship with CCS, it would be impossible (let alone "difficult[]") and not administratively feasible to identify putative class members.[13] Accordingly, the Court should strike Plaintiffs' class allegations.

---

[12] *Hogan* also shows why individualized extraterritoriality questions predominate. In holding that plaintiffs satisfied predominance as to the "User Class," the *Hogan* court noted that Illinois's extraterritoriality doctrine "means that '***a photo must have been uploaded from Illinois for BIPA to potentially apply***'" and that "whatever injury occurred happened with the uploading of the first photograph of the user's face to the app." *Hogan*, 2026 WL 3408890, at *14, 16 (emphasis added) (citation omitted). But the putative class members themselves uploaded their pictures to "Amazon Photos" in *Hogan*, at which time "the facial embedding would occur automatically upon upload." *Id.* at *14. By contrast, here it was photographer-customers (***not*** putative class members) who uploaded photos to the platform – meaning neither end users nor CCS knows from where the photos were uploaded.

[13] While "administrative feasibility" is not "an additional *required* factor" in the Tenth Circuit, administrative feasibility nonetheless "bear[s] on whether class resolution is superior to individual resolution." *Cline*, 159 F.4th at 1196.

## III. CONCLUSION

For these reasons, CCS respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint with prejudice under Rule 12(b)(6). In the alternative, CCS respectfully requests that the Court strike Plaintiffs' class allegations with prejudice.

**DATED: November 13, 2026**

Respectfully submitted,

*/s/ Gerald L. Maatman, Jr.*

Gerald L. Maatman, Jr. (*admitted pro hac vice*)
(gmaatman@duanemorris.com)
Jennifer A. Riley (*admitted pro hac vice*)
(jariley@duanemorris.com)
Justin Donoho (*admitted pro hac vice*)
(jrdonoho@duanemorris.com)
Tyler Zmick (*admitted pro hac vice*)
(tzmick@duanemorris.com)
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603-3433
Telephone: (312) 499-6700

Armando J. Rosell (OBA #18821)
(arosell@rlok.com)
ROSELL & LOVE, PLLC
101 N. Robinson Avenue
Corporate Tower, Suite 700
Oklahoma City, OK 73102
Telephone: (405) 702-0888

***Attorneys for Defendant Candid Color Systems, Inc.***

**CERTIFICATE OF SERVICE**

I, Gerald L. Maatman, Jr., an attorney, certify that on November 13, 2026, I caused a true and correct copy of the foregoing document to be served upon all counsel of record for all parties that have appeared via the Court's CM/ECF System.

/s/ *Gerald L. Maatman, Jr.*
Gerald L. Maatman, Jr.