**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

**SPENCER MAYHEW** and **ROSALIE NOREN**, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

**CANDID COLOR SYSTEMS, INC.**, an Oklahoma corporation,

Defendant.

No. 5:24-CV-0814-JD

Hon. Judge Jodi W. Dishman

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT OR STRIKE CLASS ALLEGATIONS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

RELEVANT FACTS ..... 2

a. CCS Provides an Ecommerce Platform that Includes "Facial Recognition." ..... 2

b. CCS and its Grad Photo Network Partners Use Facial Recognition to Sell More Photos. ..... 2

c. A Member of CCS's Grad Photo Network (Kabance) Photographed Plaintiffs in Illinois and CCS's Ecommerce Platform Extracted Their Biometrics. ..... 3

d. CCS and Kabance Sold and Shipped Photos to Illinois Through CCS's Website. ..... 4

PROCEDURAL HISTORY ..... 4

a. The Court Denies CCS's Motion to Dismiss. ..... 4

b. Plaintiffs File the Second Amended Complaint and the Court Orders Certification Discovery. ..... 5

c. CCS Moves to Dismiss and Strike Class Allegations. ..... 6

ARGUMENT ..... 7

I. THE COURT ALREADY DETERMINED THAT EXTRATERRITORIALITY IS NOT GROUNDS FOR DISMISSAL. ..... 7

a. Extraterritoriality Does Not Bar Plaintiffs' Claims. ..... 8

b. CCS's "New" Authority Does Not Require a Different Conclusion. ..... 10

II. PLAINTIFFS' CLASS ALLEGATIONS SHOULD NOT BE STRICKEN. ..... 12

a. CCS Does Not Show Conclusively the Class Definition Is Overbroad. ..... 14

1. There Is No Problem with Unidentifiable Class Members. ..... 15

2. The Class Definition Does Not Require Another Link to Illinois Conduct. .......... 16

3. The Class Need Not Be Defined by Reference to Biometric Possession or Collection.......... 18

b. CCS Does Not Show Conclusively the Class Is Unascertainable.......... 19

c. CCS Does Not Show Conclusively that Individual Issues Predominate. ... 22

d. CCS Does Not Show Conclusively that Class Treatment Is Inferior. .......... 25

CONCLUSION .......... 26

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Clinton HMA LLC*,
No. CIV-19-00527, 2022 WL 20806573 (W.D. Okla. July 18, 2022) ..................... 7

*Anderson Living Tr. v. ConocoPhillips Co.*,
349 F.R.D. 365 (D.N.M. 2025)........................................................................ 21, 23

*Anderson Living Tr. v. WPX Energy Prod., LLC*,
No. CIV 12-0040, 2016 WL 5376325 (D.N.M. Aug. 27, 2016) ............................ 13

*Avery v. State Farm Mut. Auto. Ins. Co.*,
835 N.E.2d 801 (Ill. 2005)............................................................... 5, 8–9, 17

*Avery v. State Farm Mut. Auto. Ins. Co.*,
746 N.E.2d 1242 (Ill. App. Ct. 2001) ...................................................................... 9

*Barbara's Sales, Inc. v. Intel Corp.*,
879 N.E.2d 910 (Ill. 2007)....................................................................................... 9

*Birts v. Winn*,
No. 23-CV-00597, 2026 WL 1162054 (D. Colo. Apr. 29, 2026) ............................. 8

*Black v. Occidental Petrol. Corp.*,
69 F.4th 1161 (10th Cir. 2023) .............................................................................. 14

*Bridgestone/Firestone, Inc. v. Loc. Union No. 998*,
No. CIV-89-2064-A, 1990 WL 269444 (W.D. Okla. Sept. 4, 1990)........................ 7

*Campana v. Nuance Commc'ns, Inc.*,
No. 21-CV-1241, 2024 WL 2809838 (N.D. Ill. Mar. 8, 2024)............................... 11

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022)...................................................................... 15

*Castelaz v. Estee Lauder Cos.*,
No. 22 CV 5713, 2024 WL 136872 (N.D. Ill. Jan. 10, 2024) ................................ 16

*Clark v. Microsoft Corp.*,
688 F. Supp. 3d 743 (N.D. Ill. 2023)........................................................................ 5

*Cline v. Sunoco, Inc. (R&M)*,
159 F.4th 1171 (10th Cir. 2025) .................................................. 19–20, 22

*Curry v. Fields Gifts, Inc.*,
744 F. Supp. 3d 1251 (D. Utah 2024)................................................... 12

*Daichendt v. CVS Pharmacy, Inc.*,
No. 22 CV 3318, 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ............................ 15

*Est. of Ronquillo v. City & Cnty. of Denver*,
No. 16-cv-01664, 2017 WL 7240908 (D. Colo. Feb. 14, 2017) ............................. 8

*Freshour v. Cerence, Inc.*,
No. 2023-CH-2866, (Cook Cty., Ill. Cir. Ct. July 17, 2026) (ECF No. 55-4)........ 24

*Freund v. McDonough*,
114 F.4th 1371 (Fed. Cir. 2024)........................................................ 19–20

*Gaertner v. Commemorative Brands, Inc.*,
351 F.R.D. 201 (S.D. Ill. 2026) .................................................. 13, 18–19

*Gulick v. State Farm Mut. Auto. Ins. Co.*,
780 F. Supp. 3d 1169 (D. Kan. 2025)................................................... 25

*Harwood v. Uponor, Inc.*,
No. 25-CV-90, 2026 WL 1078685 (E.D. Okla. Apr. 9, 2026)........ 12–13, 20–21, 24

*Hogan v. Amazon.com, Inc.*,
No. 21-CV-03169, 2026 WL 3408890 (N.D. Ill. Nov. 10, 2026)......... 17–18, 20–21

*Howe v. Speedway LLC*,
No. 1:19-CV-01374, 2024 WL 4346631 (N.D. Ill. Sept. 29, 2024)................ 18, 23

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
No. 1:13-MD-2495, 2017 WL 2540822 (N.D. Ga. June 9, 2017) ......................... 20

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
585 F. Supp. 3d 1111 (N.D. Ill. 2022) ................................................... 9

*In re Facebook Biometric Info. Priv. Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018).......................................................... 21

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015)............................................................... 19

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
208 F.R.D. 625 (W.D. Wash. 2002) .......... 12

*Kauffman v. Home Depot, Inc.*,
No. 23-CV-0259, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024) .......... 10

*Kelly v. RealPage Inc.*,
47 F.4th 202 (3d Cir. 2022) .......... 20

*Konow v. Brink's, Inc.*,
721 F. Supp. 3d 752 (N.D. Ill. 2024) .......... 15

*Landau v. CNA Fin. Corp.*,
886 N.E.2d 405 (Ill. App. Ct. 2008) .......... 9

*Low v. Chu*,
No. 09-CV-0505, 2009 WL 4582312 (N.D. Okla. Dec. 1, 2009) .......... 20

*Major v. Benton*,
647 F.2d 110 (10th Cir. 1981) .......... 7

*Manning v. Bos. Med. Ctr. Corp.*,
725 F.3d 34 (1st Cir. 2013) .......... 12

*Martell v. X Corp.*,
No. 23-C-5449, 2024 WL 3011353 (N.D. Ill. June 13, 2024) .......... 24

*McGoveran v. Amazon Web Servs., Inc.*,
No. CV-20-1399, 2021 WL 4502089 (D. Del. Sept. 30, 2021) .......... 10

*McGoveran v. Amazon Web Servs., Inc.*,
No. CV-20-1399, 2024 WL 4626253 (D. Del. Oct. 30, 2024) .......... 10–11

*McGoveran v. Amazon Web Servs., Inc.*,
175 F.4th 434 (3d Cir. 2026) .......... 10

*Melnick v. TAMKO Bldg. Prods. LLC*,
347 F.R.D. 79 (D. Kan. 2024) .......... 20

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .......... 19

*Moore v. Radae*,
2026 IL App (5th) 240795-U .......... 17

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .......... 19

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) .......... 9

*Ramsay v. Frontier, Inc.*,
No. 19-cv-03544, 2020 WL 4557545 (D. Colo. July 30, 2020).......... 12–13, 23

*Rider v. OXY USA, Inc.*,
175 F.4th 1214 (10th Cir. 2026) .......... 14–15, 19, 22

*Rikos v. Procter & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015) .......... 20

*Rimbert v. Eli Lilly & Co.*,
647 F.3d 1247 (10th Cir. 2011).......... 7

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017).......... 5, 10–11, 17

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009).......... 24

*SFF-TIR, LLC v. Stephenson*,
264 F. Supp. 3d 1148 (N.D. Okla. 2017).......... 7

*Shaw v. Hyatt Int'l Corp.*,
No. 05-C-5022, 2005 WL 3088438 (N.D. Ill. Nov. 15, 2005) .......... 9

*Svoboda v. Amazon.com Inc.*,
168 F.4th 956 (7th Cir. 2026) .......... 13–14, 18, 23

*Tapia-Rendon v. United Tape & Finishing Co.*,
No. 21-C-3400, 2023 WL 5228178 (N.D. Ill. Aug. 15, 2023) .......... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .......... 22

*United States v. Stambaugh*,
650 F. Supp. 3d 1227 (W.D. Okla. 2023) .......... 11

*Wade v. EMCASCO Ins. Co.*,
483 F.3d 657 (10th Cir. 2007) .......... 17

*Warnick v. Dish Network LLC*,
301 F.R.D. 551 (D. Colo. 2014) ........ 20

*Warren v. Am. Bankers Ins. of FL*,
507 F.3d 1239 (10th Cir. 2007) ........ 7

**Statutes**

740 ILCS 14/1 *et seq.* ........ *passim*

**Rules**

Fed. R. Civ. P. 12 ........ 7, 10

Fed. R. Civ. P. 23 ........ 20

Ill. S. Ct. R. 23 ........ 17

**Treatises**

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778 (3d ed. 2005) ........ 22

1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:3 (6th ed. 2025) ........ 19

## PRELIMINARY STATEMENT

CCS asks the Court to do two things it should not: revisit an extraterritoriality ruling it has already made, and strike Plaintiffs' class allegations before any class discovery has taken place. Neither request has merit.

Plaintiffs allege that CCS violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* (the "BIPA"), by applying its facial recognition technology to photos of Illinois residents taken at Illinois graduation ceremonies. When CCS moved to dismiss Plaintiffs' First Amended Complaint ("FAC"), the Court found Plaintiffs alleged that enough occurred in Illinois to preclude dismissal. ECF No. 41 at 16–17.[1] CCS now repeats—nearly verbatim—the same arguments against Plaintiffs' Second Amended Complaint ("SAC"). It identifies no new allegations that change the analysis, no intervening controlling authority, and no error in the Court's reasoning. So there is no reason for the Court to alter its prior, correct conclusion.

CCS's request to strike Plaintiffs' class allegations fares no better. Striking class allegations is disfavored and appropriate only when it is clear that certification will be impossible. CCS cannot make that showing. Its arguments rest on a disputed "identifiability" requirement and speculation about absent class members—neither of which is sufficient to meet CCS's burden. Meanwhile, CCS ignores that courts have certified BIPA classes defined in materially similar terms, including a class of Illinois graduates whose photos were processed with the same facial recognition technology CCS

[1] All citations to ECF documents refer to the page numbers in the ECF header.

uses. CCS's arguments can be resolved at certification, after the class discovery the Court has already ordered. But for now, its motion must be denied.

## RELEVANT FACTS

### a. CCS Provides an Ecommerce Platform that Includes "Facial Recognition."

Defendant Candid Color Systems, Inc. ("CCS") helps photographers "market and sell images for events." ECF No. 50 ¶ 21. It does this in part through a web-based "Ecommerce" platform. *Id.* ¶ 22. CCS's platform includes a feature that CCS itself calls "Facial Recognition." *Id.* ¶¶ 23, 28. According to CCS, this facial recognition feature is "built into [CCS's] website" and allows consumers to "click on one of their images to see all of their images." *Id.* ¶ 23. CCS explains that "[b]y eliminating the need to search for their images[,] customers are more likely to buy." *Id.*

### b. CCS and its Grad Photo Network Partners Use Facial Recognition to Sell More Photos.

CCS owns the trademark for and sometimes does business as "Grad Photo Network." *Id.* ¶ 47. CCS represents that Grad Photo Network is "the largest network of professional photographers for graduation and commencement ceremonies." *Id.* CCS maintains a website for the Network at https://www.gradphotonetwork.com (the "Website"). *Id.* ¶ 48.

Photographers who are part of the Grad Photo Network can use CCS's Ecommerce platform—and the facial recognition feature that is "built into" it—to market and sell their photos through the Website. *Id.* ¶¶ 23, 48. CCS participates in those sales: it collects an "Ecommerce fee" of 2–6% or more. *Id.* ¶ 32. CCS has substantial control over its

Ecommerce platform. It can determine whether photos depicting specific people were uploaded to the platform, as well as who uploaded the photos. *Id.* ¶ 31. CCS also exercises control over orders placed through the Website. *Id.* ¶ 51.

### c. A Member of CCS's Grad Photo Network (Kabance) Photographed Plaintiffs in Illinois and CCS's Ecommerce Platform Extracted Their Biometrics.

Kabance Photo Services, Inc. ("Kabance") is part of the Grad Photo Network and uses CCS's Ecommerce platform. *Id.* ¶ 53. Kabance, as part of the Grad Photo Network, photographed Plaintiffs Mayhew and Noren at their respective Illinois graduation ceremonies and uploaded the photos to the Website. *Id.* ¶¶ 54–55, 66–67.

The photos of Mayhew and Noren are publicly available on the Website.[2] When any photo of Mayhew or Noren is selected by clicking on it, a dotted-line rectangular field appears around their faces, and in most cases, around the faces of the other people depicted in the photos. *Id.* ¶¶ 57–59, 69–71. When the Website user clicks inside the rectangular field around a person's face, the webpage is refreshed and returns with other photos depicting the person whose face was clicked. *Id.* The address of the webpage that is returned includes, at the end, a "FaceId" that is unique to the person whose face was

---

[2] The photos of Mayhew can be viewed by accessing the Website at https://www.gradphotonetwork.com/QPPlus/SearchNames.aspx?EventID=2244221&AccountNumber=32298, entering the last name "Mayhew," clicking the "Continue" button, and then clicking the "View Proofs" button next to Mayhew's name. The photos of Noren can be viewed by accessing the Website at https://www.gradphotonetwork.com/QPPlus/SearchNames.aspx?EventID=2147496&AccountNumber=32298, entering the last name "Noren," clicking the "Continue" button, and then clicking the "View Proofs" button next to Noren's name. ECF No. 50 ¶¶ 56, 68.

clicked.[3] Notably, this functionality is generally not present for people who are wearing face masks. *Id.* ¶ 71.

Plaintiffs allege that this functionality, together with CCS's representations about its facial recognition feature, shows that CCS captured their biometrics. *Id.* ¶¶ 60, 72.

**d. CCS and Kabance Sold and Shipped Photos to Illinois Through CCS's Website.**

After Mayhew's graduation, his mother received an email soliciting her to view and purchase his photos from the Website. *Id.* ¶ 61. Mayhew's mother used the Website to purchase physical prints of Mayhew's photos, which were shipped to her Illinois residence. *Id.* ¶ 62. CCS exercises control over such orders: it "reserves the right . . . to accept, decline, or limit" orders; may "mail [photos] directly" to the customer, and "charges sales taxes." *Id.* ¶ 51(b), (f), (g).

## PROCEDURAL HISTORY

**a. The Court Denies CCS's Motion to Dismiss.**

In October 2024, CCS moved to dismiss the FAC. ECF No. 28. CCS argued, *inter alia*, that Plaintiffs' claims should be dismissed because they do not satisfy Illinois' extraterritoriality doctrine, *see id.* at 15–22, and because Plaintiffs did not plausibly allege that CCS possesses or collects biometrics. *See id.* at 26–29.

---

[3] For example, the address returned when Mayhew's face is clicked is https://www.gradphotonetwork.com/QPPlus/Proofs.aspx?EventID=2244221&AccountNumber=32298&FaceId=1162829, indicating a "FaceId" of 1162829. The address returned when Noren's face is clicked is https://www.gradphotonetwork.com/QPPlus/Proofs.aspx?EventID=2147496&AccountNumber=32298&FaceId=604077, indicating a "FaceId" of 604077. ECF No. 50 ¶¶ 58, 70.

The Court rejected these arguments. ECF No. 41. As to extraterritoriality, the Court explained that CCS was wrong to place "great reliance on the fact that [CCS] itself did not have contact with Illinois." *Id.* at 15. "[T]he inquiry is not what *conduct of* [*CCS*] occurred in Illinois," but "whether *events* giving rise to the alleged BIPA violations occurred in Illinois." *Id.* (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101 (N.D. Ill. 2017)). The Court thus found that "Plaintiffs have alleged enough of the events giving rise to the alleged BIPA violations occurred in Illinois to survive a motion to dismiss." *Id.* at 16–17.

As to Plaintiffs' allegations concerning possession and collection, the Court found that Plaintiffs adequately alleged both activities. *See id.* at 19–24. The Court rejected CCS's argument that it "had to have specific knowledge about Plaintiffs' specific data to demonstrate possession," *id.* at 22, and agreed with Plaintiffs that their allegations are akin to cases where "the defendant could 'access' and 'extract' biometric data uploaded by an intermediary," which is enough to state a BIPA claim. *Id.* at 23 (quoting *Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 748 (N.D. Ill. 2023)).

**b. Plaintiffs File the Second Amended Complaint and the Court Orders Certification Discovery.**

On October 19, 2026, the Court granted Plaintiffs' motion for leave to file the SAC, ECF No. 49, and Plaintiffs filed the same on October 23. ECF No. 50. The SAC contains two material amendments. First, Plaintiffs added allegations regarding the Microsoft Azure software that CCS uses to enable its facial recognition feature. *See* ECF No. 47-2 ¶¶ 33–46. Second, Plaintiffs revised the class definition from "[a]ll residents of

the State of Illinois whose biometric information or biometric identifiers were collected, captured, purchased, received through trade, or otherwise obtained by, or profited from by Defendant while residing in Illinois," to "[a]ll residents of the State of Illinois depicted in photos that were taken within the State of Illinois and that had Defendant's facial recognition technology applied to them within the applicable limitations period and before the date notice is disseminated." *Id.* ¶ 91.

On the same date the Court allowed Plaintiffs to file the SAC, it also asked the parties to submit a proposed scheduling order. ECF No. 48. The parties could not reach agreement and instead submitted competing proposals. Plaintiffs sought to proceed with class discovery and certification, *see* ECF No. 51 at 2–5, while CCS wanted to delay certification until the merits of the named Plaintiffs' claims were resolved. *See id.* at 6–10. On November 4, the Court entered a Scheduling Order providing for "limited class discovery, followed by merits-based discovery." ECF No. 54 at 1 n.1.

**c. CCS Moves to Dismiss and Strike Class Allegations.**

On November 13, CCS filed the instant motion to dismiss and strike Plaintiffs' class allegations. ECF No. 55. The motion comes as Plaintiffs are attempting to move forward with class discovery consistent with the Scheduling Order. Plaintiffs issued to CCS requests for production back in August 2025, but CCS has not yet produced any documents. During a November 19 conference regarding CCS's extensive objections, *see* **Exhibit 1**, CCS indicated it did not intend to fully respond to Plaintiffs' Request No. 2—asserting instead that a "sampling" should be sufficient—even though that request bears directly on the ascertainability and identifiability issues CCS raises in its motion.

## ARGUMENT

### I. THE COURT ALREADY DETERMINED THAT EXTRATERRITORIALITY IS NOT GROUNDS FOR DISMISSAL.[4]

CCS first asks the Court to reconsider and reverse its prior finding that Plaintiffs' claims should not be dismissed under the extraterritoriality doctrine. As this Court has observed, motions for reconsideration are like "an attempt to shut the barn door after the horses have gone." *Allen v. Clinton HMA LLC*, No. CIV-19-00527, 2022 WL 20806573, at *2 n.2 (W.D. Okla. July 18, 2022) (quoting *Bridgestone/Firestone, Inc. v. Loc. Union No. 998*, No. CIV-89-2064-A, 1990 WL 269444, at *1 (W.D. Okla. Sept. 4, 1990)). District courts are free to reconsider their interlocutory rulings, but generally should do so only when "convinced" that the prior ruling is "substantially erroneous." *Id.* at *2 (quoting *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981)); *accord Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1243 (10th Cir. 2007) (district courts should reconsider interlocutory rulings "where error is apparent"). Alternatively, courts may "require parties [seeking reconsideration] to establish one of the law-of-the-case grounds,[5] or . . . refuse to entertain motions to reconsider altogether." *SFF-TIR, LLC v. Stephenson*, 264 F. Supp. 3d 1148, 1219 (N.D. Okla. 2017).

There is no legitimate basis for reconsideration here. CCS does not argue that new

---

[4] CCS purports to incorporate "all Rule 12(b)(6) arguments from its motion to dismiss Plaintiffs' FAC." ECF No. 55 at 11 n.5. Plaintiffs likewise incorporate their opposing arguments. *See* ECF No. 33 at 15–33.

[5] These grounds for reconsideration are "(1) new and different evidence; (2) intervening controlling authority; or (3) a clearly erroneous prior decision which would work a manifest injustice." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011).

allegations in the SAC affect the Court's prior analysis. Nor does CCS contend there is new controlling authority or that the Court's prior ruling contained identifiable errors. Instead, CCS repeats—nearly verbatim—the same arguments the Court already rejected. *Compare* ECF No. 55 at 12 ("For similar reasons . . . .") *with* ECF No. 28 at 15 ("For similar reasons . . . ."); ECF No. 55 at 12 ("Plaintiffs' claims fail . . . .") *with* ECF No. 28 at 16 ("Plaintiffs' BIPA claims fail . . . ."); ECF No. 55 at 13 ("Plaintiffs instead point repeatedly . . . .") *with* ECF No. 28 at 16 ("Plaintiffs instead point repeatedly . . . ."); ECF No. 55 at 14 ("Plaintiffs also try to allege . . . .") *with* ECF No. 28 at 17 ("Plaintiffs also try to allege . . . ."); ECF No. 55 at 15 ("Plaintiffs' reliance on the online Terms . . . .") *with* ECF No. 28 at 18 ("Plaintiffs' reliance on the GPN Terms . . . ."); ECF No. 55 at 16 ("Plaintiffs seek to extend BIPA . . . .") *with* ECF No. 28 at 22 ("Plaintiffs seek to extend the BIPA . . . ."). This is improper, because motions for reconsideration are not meant "for a losing party merely to rehash arguments previously considered and rejected." *Birts v. Winn*, No. 23-CV-00597, 2026 WL 1162054, at *3 (D. Colo. Apr. 29, 2026) (quoting *Est. of Ronquillo v. City & Cnty. of Denver*, No. 16-cv-01664, 2017 WL 7240908, at *1 (D. Colo. Feb. 14, 2017)). This Court already explained why CCS's arguments fail, and nothing new changes that conclusion.

**a. Extraterritoriality Does Not Bar Plaintiffs' Claims.**

Illinois statutes like the BIPA apply when "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 854. "[T]here is no single formula or bright-line test." *Id.* "Rather, each case must be decided on its own facts." *Id.*

CCS's primary extraterritoriality argument—both now and in its prior motion—is that Plaintiffs do not allege that CCS engaged in "relevant conduct" in Illinois. *See* ECF No. 55 at 12–13; *see also* ECF No. 28 at 16. But the *Avery* analysis has never focused on the location of the defendant's conduct. Indeed, *Avery* reversed the lower court's holding that the dispositive issue is where the defendant "devised" and "implement[ed]" its allegedly wrongful practices. 835 N.E.2d at 854 (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 746 N.E.2d 1242, 1254 (Ill. App. Ct. 2001)). Hence many extraterritoriality decisions (including *Avery*) reject out-of-state residents' attempts to assert Illinois laws against Illinois defendants whose alleged tortious conduct originated from their Illinois headquarters. *See id.* (Louisiana resident); *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 408–09 (Ill. App. Ct. 2008) (Pennsylvania resident); *Shaw v. Hyatt Int'l Corp.*, No. 05-C-5022, 2005 WL 3088438, at *2–3 (N.D. Ill. Nov. 15, 2005) (London resident). Yet the Illinois Supreme Court recognized there is no problem with Illinois residents asserting Illinois law against a Delaware corporation headquartered in California where their claims arose from a marketing campaign developed in and directed from California. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 918–19, 924–25 (Ill. 2007).

Courts applying *Avery* to the BIPA consistently reject contentions that claims are barred unless the biometric scanning itself occurred in Illinois. The BIPA's legislative history makes it "reasonable to infer that the General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019) (extraterritoriality did not bar claims where defendant "collect[ed] . . . biometric data . . .

on its servers outside of Illinois"); *see also In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111, 1121–22 (N.D. Ill. 2022) (did not bar claims where "the scraping of facial images [for biometrics]" occurred outside Illinois); *Rivera*, 238 F. Supp. 3d at 1102 (claims "not necessarily" barred even if "scanning [of photos to extract biometrics] takes place outside of Illinois").

The Court's prior ruling correctly applied these principles. There is no question that "some of the conduct relating to [Plaintiffs'] alleged BIPA violations did occur in Illinois." ECF No. 41 at 15. CCS's arguments are misdirected because "the inquiry is not what *conduct of* [*CCS*] occurred in Illinois," but "whether *events* giving rise to the alleged BIPA violations occurred in Illinois." *Id.* And CCS's reliance on personal jurisdiction precedent[6] is likewise misplaced because "the inquiries are distinct" and the extraterritoriality analysis requires the Court to consider "all the facts alleged in Plaintiffs' Complaint, not just [CCS]'s actions." *Id.* at 16. Hence CCS's attempt to rehash its extraterritoriality arguments fares no better the second time around.

**b. CCS's "New" Authority Does Not Require a Different Conclusion.**

CCS cites in the extraterritoriality section of its brief three nonbinding decisions not included in its prior filing. None give the Court reason to amend its prior analysis.

Two of the decisions come from the same case—*McGoveran v. Amazon Web Services, Inc.*—that CCS previously relied upon. CCS's prior motion cited the district court's grant of dismissal under Rule 12(b)(6). *See* No. CV-20-1399, 2021 WL 4502089

[6] *See* ECF No. 55 at 15 (citing *Kauffman v. Home Depot, Inc.*, No. 23-CV-0259, 2024 WL 221434 (S.D. Cal. Jan. 19, 2024)).

(D. Del. Sept. 30, 2021). CCS again cites that decision, as well as the district court's order granting summary judgment, *see* 2024 WL 4626253 (D. Del. Oct. 30, 2024), and the Third Circuit's affirmance, *see* 175 F.4th 434 (3d Cir. 2026). The plaintiffs there were Illinois residents who alleged the defendants collected their voiceprints from calls placed from Illinois but—after discovery—could identify no other Illinois contacts. *See, e.g.*, 2024 WL 4626253, at *5. Those decisions are poor comparators for this case, not just because Plaintiffs remain at the pleading stage, but because they allege a host of other Illinois contacts. Illinois is where Plaintiffs were photographed and harmed, ECF No. 41 at 15; where Plaintiffs or their family were solicited to buy photos from the Website, *see* ECF No. 50 ¶¶ 61, 73; where Plaintiff Mayhew's mother received the photos she purchased, *see id.* ¶¶ 51–52, 62; where the high school CCS allegedly "subcontract[ed]" with is located, *see* ECF No. 28 at 23–25; and where Plaintiffs logically should have been asked to provide BIPA-compliant consent. *See Rivera*, 238 F. Supp. 3d at 1101–02. That is "enough . . . to survive a motion to dismiss." ECF No. 41 at 16–17.

The other decision, *Campana v. Nuance Communications, Inc.*, involved similar allegations of voiceprint collection, *see* No. 21-CV-1241, 2024 WL 2809838, at *1 (N.D. Ill. Mar. 8, 2024), and so is inapposite for the same reason. Moreover, *Campana* was decided over six months before CCS filed its prior motion and therefore is not "new" authority. *See United States v. Stambaugh*, 650 F. Supp. 3d 1227, 1232–33 (W.D. Okla. 2023) (denying motion for reconsideration based on "cases . . . decided long before the Court's order" that signal no "change in controlling law"). So CCS "shows no need to correct clear error," *id.* at 1233, and no need for the Court to depart from its prior ruling.

## II. PLAINTIFFS' CLASS ALLEGATIONS SHOULD NOT BE STRICKEN.

Having failed in its attempt to delay class discovery, *see supra* at 5–6, CCS now wants to eliminate Plaintiffs' class allegations before that discovery can take place. But CCS cannot show that certification is impossible as a matter of law, so this portion of its motion too must be denied.

Striking class allegations is "disfavored in practice." *Curry v. Fields Gifts, Inc.*, 744 F. Supp. 3d 1251, 1262 (D. Utah 2024) (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)). This is because it is a "drastic remedy . . . often sought . . . simply as a dilatory or harassing tactic," and because it asks the court to "preemptively terminate the class aspects of litigation . . . before plaintiffs are permitted to complete the discovery to which they would otherwise be ***entitled*** on questions relevant to class certification."[7] *Id.* (quoting *Manning*, 725 F.3d at 59) (cleaned up) (emphasis added). So while "the Tenth Circuit has not articulated a standard for evaluating preemptive motions to deny class certification, judges in [the circuit] have held motions to strike class allegations are . . . subject to a high standard of proof." *Ramsay v. Frontier, Inc.*, No. 19-cv-03544, 2020 WL 4557545, at *23 (D. Colo. July 30,

---

[7] CCS asserts that a plaintiff responding to a motion to strike class allegations "must show that discovery is 'likely to yield persuasive information substantiating the class allegations.' " ECF No. 55 at 17 (citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 629–30 (W.D. Wash. 2002)). Not so. *Curry* and the other cases cited here demonstrate that discovery before deciding class issues is the norm, not the exception. Even in *In re PPA*, the court "afforded plaintiffs an opportunity to conduct discovery" before responding to the defendants' motion to strike. 208 F.R.D. at 629. And Plaintiffs issued to CCS over a year ago discovery intended to substantiate their class allegations. *See, e.g.*, Ex. 1 ¶¶ 1, 2, 7, 24–33. CCS's reluctance to provide this discovery suggests not that it will show certification to be improper, as CCS urges, but the opposite.

2020); *accord Harwood v. Uponor, Inc.*, No. 25-CV-90, 2026 WL 1078685, at *2 (E.D. Okla. Apr. 9, 2026). The required showing is that "it will be ***impossible*** to certify the classes alleged . . . regardless of the facts the plaintiffs may be able to prove." *Harwood*, 2026 WL 1078685, at *3 (quoting *Anderson Living Tr. v. WPX Energy Prod., LLC*, No. CIV 12-0040, 2016 WL 5376325, at *7 (D.N.M. Aug. 27, 2016)) (emphasis added). That showing must be made "***conclusively***," with the plaintiffs' factual allegations "accepted as true." *Ramsay*, 2020 WL 4557545, at *23, *24 (emphasis added). In nearly all cases, the issue is "more appropriately resolved on [a] motion for class certification, after . . . complete discovery." *Harwood*, 2026 WL 1078685, at *3.

This case provides no exception to the usual rule. Indeed, CCS's bid to strike Plaintiffs' class allegations runs directly into another obstacle: BIPA cases alleging similar conduct and with classes defined in similar terms are routinely certified. In one such case, *Gaertner v. Commemorative Brands, Inc.*, an Illinois federal court certified a class of plaintiffs who alleged their biometrics were captured after the defendants photographed them at their school graduation ceremonies. *See* 351 F.R.D. 201, 208–10 (S.D. Ill. 2026). The defendants there used the same underlying facial recognition technology (Microsoft Azure) as does CCS. *Id.* at 209. The class there was defined (like here) as "[a]ll individuals depicted in photos taken by [Defendants] in the State of Illinois and submitted for facial recognition on or after July 14, 2018." *Id.* at 209, 210. And the defendants there raised (without success) the same extraterritoriality defense that undergirds most of CCS's arguments. *See id.* at 211–13. In another recent decision, the Seventh Circuit affirmed that certification properly was granted for a BIPA class

involving facial biometrics. *See Svoboda v. Amazon.com Inc.*, 168 F.4th 956, 958 (7th Cir. 2026). That court likewise rejected the arguments that extraterritoriality concerns precluded certification of a class defined as "all individuals who used a [virtual try-on] feature on Amazon's mobile website or app while in Illinois on or after September 7, 2016." *See id.* at 960, 962–65.

Contrary to CCS's arguments, those courts—dealing with cases much like this one—did not ignore problems so glaring that certification can be deemed "impossible" even before discovery has occurred. So Plaintiffs' class allegations cannot be stricken.

**a. CCS Does Not Show Conclusively the Class Definition Is Overbroad.**

CCS first argues that Plaintiffs' class allegations should be stricken because the proposed class definition is "overbroad." *See* ECF No. 55 at 18–22. CCS's argument has three prongs: first, that the proposed class includes persons who cannot be identified, *id.* at 19–20; second, that the class definition is not linked to any relevant in-state conduct, *id.* at 20–21; and third, that the class is not defined in terms of whether CCS collected or possessed biometrics. *Id.* at 21–22. These arguments misapprehend both what it means for a class to be overbroad under Tenth Circuit precedent and how issues of overbreadth should be resolved.

The Tenth Circuit recently affirmed that "[t]he presence of class members who experienced varying degrees of injury, including some who were altogether uninjured, does not bar class certification." *Black v. Occidental Petrol. Corp.*, 69 F.4th 1161, 1185 (10th Cir. 2023). Only when a class includes "a ***significant portion*** of members who . . . could not have been harmed by the defendant's allegedly unlawful conduct" is it "defined

too broadly." *Rider v. OXY USA, Inc.*, 175 F.4th 1214, 1226 (10th Cir. 2026) (quoting *Black*, 69 F.4th at 1185) (emphasis added). And overbreadth problems that arise from the class definition (rather than the nature of the claims) are solvable. "[T]he class definition need not be perfect," and even "at the certification stage," some "imprecision in the class definition is acceptable." *Id.* at 1226–27. When concerns "could be alleviated by modifying the class definition slightly," both courts and the parties can do so. *Id.* at 1227. So CCS's arguments are without merit, but even if the Court finds otherwise, the remedy is to tweak the class definition—not deny certification out of hand.

**1. There Is No Problem with Unidentifiable Class Members.**

CCS's first argument—that individuals only have BIPA claims if their biometrics are linked to other personally-identifying information—is itself a contested legal issue. Some courts have found that "a defendant may violate BIPA even ***without*** using technology for the purpose of identifying an individual." *Konow v. Brink's, Inc.*, 721 F. Supp. 3d 752, 755 (N.D. Ill. 2024) (emphasis added); *accord Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 518 n.2 (N.D. Ill. 2022) (rejecting argument that defendant "must have actually used Plaintiff's voiceprint and 'identified him as speaking to the voice assistant' to implicate BIPA"). Under this view, allegations that defendants collected "scans" of "unique" facial features "suffice[ ] to state a BIPA claim under the plain text of the statute." *Konow*, 721 F. Supp. 3d at 755. The "narrower reading," in contrast, requires "some explicit link between a collected scan and a plaintiff's identity." *Id.* at 757 (citing *Daichendt v. CVS Pharmacy, Inc.*, No. 22 CV 3318, 2022 WL 17404488, at *1 (N.D. Ill. Dec. 2, 2022)). That standard is satisfied by allegations that

defendants possess "information, such as [plaintiffs'] names or physical or email addresses, that could connect the voluntary scans of face geometry with their identities." *Id.* (quoting *Daichendt*, 2022 WL 17404488, at *5).

The Court need not resolve the dispute now because Plaintiffs have alleged enough under either view. The SAC alleges that CCS's facial recognition feature captures the "unique geometry" of their "facial images" and that photos of Plaintiffs—organized by facial recognition—can be accessed by searching for their names on the Website. ECF No. 50 ¶¶ 27, 35, 56–60, 68–72. And the SAC alleges that the same is true for "hundreds of other individuals," including, at minimum, Plaintiffs' classmates. *Id.* ¶¶ 77–79. Even under the narrower view, nothing more is required.[8]

**2. The Class Definition Does Not Require Another Link to Illinois Conduct.**

CCS next argues the class definition "is not sufficiently linked to any relevant in-state conduct." ECF No. 55 at 20. This is simply a variation of the extraterritoriality argument that the Court already rejected. CCS assumes that extraterritoriality bars putative class members' claims unless their photos were uploaded to the Ecommerce

[8] CCS also argues that identifiability is a problem because the identifying information linked to photos is provided by its photographer-customers. *See* ECF No. 55 at 29 n.11. But even the narrower view of the BIPA requires only that the "collected facial scans" can be used to determine individuals' identities, "whether alone or in conjunction with other methods or sources of information available to [the defendant]." *Castelaz v. Estee Lauder Cos.*, No. 22 CV 5713, 2024 WL 136872, at *7 (N.D. Ill. Jan. 10, 2024). The identifying information that photographer-customers associate with facial scans is available to CCS. *See* ECF No. 50 ¶ 31. And while CCS speculates that information may not be accurate, ECF No. 55 at 23, that is dubious: the purpose of CCS's facial recognition feature is to sell more photos, *see* ECF No. 50 ¶¶ 23–24, but it cannot do that unless photo subjects are identified accurately.

platform in Illinois. But that view is supported neither by the Court's prior findings on extraterritoriality nor by case law.

First, the Court's prior ruling was not that Plaintiffs (or putative class members) must show their photos were uploaded in Illinois to have valid BIPA claims. The Court wrote that upload location is "but one factor" in the extraterritoriality analysis. ECF No. 41 at 15; *cf. Rivera*, 238 F. Supp. 3d at 1102 ("Even if we do definitely determine that the [biometric] scanning takes place outside of Illinois, that would not necessarily be dispositive [of the extraterritoriality issue]."). So CCS cannot dispose of the class allegations by asserting that extraterritoriality hinges on the upload location.

Second—and consistent with the Court's analysis—the law accords no special significance to the upload location. The question is whether "the circumstances that relate to the disputed transaction" occurred "primarily and substantially in Illinois."[9] *Avery*, 835 N.E.2d at 854. A host of things occurred in Illinois regardless of where Plaintiffs' photos were uploaded. *See supra* at 11. It can be inferred that most or all of those Illinois contacts also exist for the putative class members (who all are Illinois residents photographed in Illinois). So there is no basis to conclude—especially before discovery—that an Illinois upload location is a *sine qua non* for putative class members' claims.

---

[9] CCS cites the unpublished disposition *Moore v. Radae*, which formulates the inquiry as whether "the circumstances *supporting the elements of the cause of action* occurred primarily and substantially in Illinois." 2026 IL App (5th) 240795-U, ¶ 44 (emphasis added). But unpublished decisions are nonprecedential, *see* Ill. S. Ct. R. 23(e), and this Court, sitting in diversity, must apply Illinois law as announced by the Illinois Supreme Court. *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007).

The decision in *Hogan v. Amazon.com, Inc.* is not to the contrary. The court there certified a class of Amazon users and denied certification for a class of non-users. No. 21-CV-03169, 2026 WL 3408890, at *1 (N.D. Ill. Nov. 10, 2026). While the court restricted the user class definition to photos uploaded in Illinois, the court itself was "not entirely sure" that upload location was the "correct inquiry." *Id.* at *14 n.11. Rather, the court saw the "only issue" as where notice would have been provided and consent obtained—"but the plaintiffs [did] not advance [that] argument." *Id.* And crucially, because the class definition there was not restricted to photos *taken* in Illinois, *see id.* at *8, *19, those claims did not (necessarily) have an Illinois contact that will be common to all claims within Plaintiffs' proposed class. Simply put, that the *Hogan* court included upload location in the class definition does not mean the same is required here.

### 3. The Class Need Not Be Defined by Reference to Biometric Possession or Collection.

CCS further argues that the class definition is improper because it does not refer to whether CCS collected biometrics. ECF No. 55 at 21–22. Plaintiffs do not dispute that CCS can be liable under the BIPA only if it possesses or collects biometrics. But that does not mean the class should (let alone *must*) be defined in those terms. The classes certified in *Gaertner* and *Svoboda*, *see supra* at 13–14, were not so defined. Nor are other certified BIPA classes. *See, e.g.*, *Howe v. Speedway LLC*, No. 1:19-CV-01374, 2024 WL 4346631, at *15 (N.D. Ill. Sept. 29, 2024) (certifying class of "[a]ll individuals who used a finger scanner on a timeclock while working for Speedway in the State of Illinois between September 1, 2012, and November 1, 2017"); *Tapia-Rendon v. United Tape & Finishing*

*Co.*, No. 21-C-3400, 2023 WL 5228178, at *3 (N.D. Ill. Aug. 15, 2023) (certifying class of "[a]ll individuals who used any cloud-based EWF biometric device in Illinois on or after June 24, 2016").

And there is good reason why BIPA classes should *not* be defined in that way. Doing so risks creating a "fail-safe class[ ]," that is, one where class membership is "defined in terms of success on the merits." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). Fail-safe classes are undesirable because "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). The Tenth Circuit has not expressly decided whether a fail-safe class definition bars certification,[10] but has noted courts are "reluctan[t]" to permit them. *Rider*, 175 F.4th at 1227 (citing *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015)).

So whether CCS possesses or collects biometrics need not be an element of class membership. Rather, it is a "quintessential common question" that binds the class together because "if [Plaintiffs] cannot show [CCS] obtained or possessed biometrics, all claims fail." *Gaertner*, 351 F.R.D. at 221.

**b. CCS Does Not Show Conclusively the Class Is Unascertainable.**

CCS next argues that the class definition fails because certain categories of class members are not identifiable. *See* ECF No. 55 at 22–25. This argument—like CCS's

[10] *See Cline v. Sunoco, Inc. (R&M)*, 159 F.4th 1171, 1196 n.19 (10th Cir. 2025).

overbreadth argument—misunderstands what ascertainability requires and falls well short of showing that it is "impossible" for an ascertainable class to be certified.

A proper class definition must allow class members to be "ascertained by objective criteria." *Cline*, 159 F.4th at 1194 (quoting 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:3 (6th ed. 2025)). "[T]here is no basis for finding a lack of ascertainability because it is difficult to identify the class members." *Id.* at 1196 (quoting *Freund v. McDonough*, 114 F.4th 1371, 1378 (Fed. Cir. 2024)). Thus "gaps in the records kept and produced by a defendant cannot be used to hinder class certification." *Id.* at 1194. And "defendant[s] cannot avoid class certification by objecting 'to the number of records that must be individually reviewed,' because that 'is essentially an objection to the size of the class, which explicitly is not a reason to deny class certification.' " *Id.* at 1195 (quoting *Kelly v. RealPage Inc.*, 47 F.4th 202, 224 (3d Cir. 2022)) (cleaned up). At bottom, all that is required is that members can be identified with "reasonable accuracy" at "some stage of the proceeding." *Id.* at 1194, 1195 (quoting *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525–26 (6th Cir. 2015); *Freund*, 114 F.4th at 1378). So the administrative feasibility of identifying class members "should not operate as a trump card that outweighs all other factors under Rule 23." *Id.* at 1196.

CCS cites no authority in which concerns about ascertainability resulted in class allegations being stricken before discovery. Most of the decisions CCS cites on this point

came on motions for class certification;[11] the two that did not either declined to strike the class allegations, *see Harwood*, 2026 WL 1078685, at *2 (rejecting defendant's arguments as "unpersuasive at this stage of litigation"), or involved a *pro se* complaint that "commingled" individual and class allegations and was broadly "deficient" and "unintelligible." *Low v. Chu*, No. 09-CV-0505, 2009 WL 4582312, at *2, *3 (N.D. Okla. Dec. 1, 2009). That is poor support for the drastic remedy CCS seeks.

What is more, CCS's argument is weak on its own terms. It is limited to certain subsets of the proposed class. *See* ECF No. 55 at 23 ("To illustrate, Plaintiffs' class includes: . . . ."). And CCS's assertions that those subsets are not ascertainable are based on speculation. Even if CCS were making this argument at the certification stage, it would need to ***show*** there are a substantial number of putative class members in those categories, not simply speculate there might be. *See Anderson Living Tr. v. ConocoPhillips Co.*, 349 F.R.D. 365, 425 (D.N.M. 2025) (defendant seeking to "inject individual issues into the case" to defeat certification "must discover and present proof against each individual class member to whom [those] theories apply"); *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) ("Mere speculation about class variability does not meet defendant's burden of demonstrating that individual issues predominate." (cleaned up)). There is no basis to entertain CCS's speculation about

---

[11] *See Hogan*, 2026 WL 3408890, at *1; *Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79, 92 (D. Kan. 2024); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-MD-2495, 2017 WL 2540822, at *4 (N.D. Ga. June 9, 2017); *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 553 (D. Colo. 2014).

whether unidentifiable persons constitute such a large percentage of the class as to preclude certification, let alone leap to the conclusion that unidentifiable persons make certification "impossible." *Harwood*, 2026 WL 1078685, at *3.

Finally, the *Hogan* court's denial of certification for non-users means little here. The problem in *Hogan* was that the non-user claims extended to ***any*** photos taken by ***any*** person and uploaded to an Amazon photos account. 2026 WL 3408890, at *9. So "[f]ew, if any, of the non-users would have any way of knowing that they appear in users' photographs." *Id.* That is not the case here, where all class members will be persons who attended an Illinois event photographed by one of CCS's photographer-customers. That is a finite pool of potential class members. And because there is no basis to say it will be "impossible" to identify those people with reasonable accuracy, *Hogan* does not require that Plaintiffs' class allegations be stricken.

**c. CCS Does Not Show Conclusively that Individual Issues Predominate.**

CCS next argues Plaintiffs cannot show that common issues predominate. ECF No. 55 at 25–30. But like CCS's other arguments, this one rests on a disputed legal premise and speculation about absent class members and does not come close to showing that certification is impossible.

The predominance inquiry tests "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Rider*, 175 F.4th at 1230 (quoting *Cline*, 159 F.4th at 1186). The standard is "predominance, not perfection." *Id.* (quoting *Cline*, 159 F.4th at 1187). So "it is not necessary that all of the elements of the claim entail questions of fact and law

that are common to the class, nor that the answers to those common questions be dispositive." *Id.* (quoting *Cline*, 159 F.4th at 1187). As long as "one or more of the central issues in the action are common to the class and . . . predominate," the action can be certified, "even [if] other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (quoting 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1778, at 123–24 (3d ed. 2005)).

"[P]redominance is often satisfied when a defendant has implemented a class-wide scheme, policy, or practice." *Rider*, 175 F.4th at 1231 (quoting *Cline*, 159 F.4th at 1187–88). Hence predominance usually exists in BIPA cases because the plaintiffs are trying to prove the defendant applied a "practice" of collecting biometrics uniformly across the putative class. *See Svoboda*, 168 F.4th at 964 ("One alleged course of conduct sufficiently unites the class's claims—Amazon's unlawful use of the [virtual try-on] feature."); *Howe*, 2024 WL 4346631, at *17 ("Every element of each proposed class member's claims will be the same across the class: (1) whether [the defendant] collected their biometric data; and (2) if it did, whether [the defendant] complied with the notice, policy, and consent requirements under BIPA Sections 15(a), (b) and (d).").

CCS's argument against predominance stems from the same disputed "identifiability" requirement that underlay its challenge to the class definition. *See supra* at 15–16. CCS contends that determining whether it violated the BIPA as to a particular class member "would require [individual inquiries] into whether CCS had reliable

information capable of identifying a person appearing in an uploaded photo." ECF No. 55 at 26. But Plaintiffs' allegations—which must be accepted as true, *Ramsay*, 2020 WL 4557545, at *23—do not support that argument. Plaintiffs do not allege that there are persons appearing in facially-recognized photos for whom CCS does not have identifying information.[12] Rather, Plaintiffs allege that their own facially-recognized photos can be found on the Website by searching for their names, ECF No. 50 ¶¶ 56–60, 68–72, and the same is true for "hundreds of other individuals." *Id.* ¶ 79; *see also id.* ¶¶ 77–78, 84. CCS cannot defeat certification by making unsupported assertions about other putative class members—not on a motion for certification, *see Anderson Living Tr.*, 349 F.R.D. at 425, and certainly not this motion to strike, where its burden is to "conclusively" establish that certification is "impossible." *Harwood*, 2026 WL 1078685, at *3.

The decisions CCS cites say no different. The trial court decision in *Freshour v. Cerence, Inc.*—which came on a motion for class certification following discovery—identified four distinct individualized issues. *See* ECF No. 55-4 at 6–7 ("whether any putative class member actually used the challenged technology"; "the type of command made by each user"; "[t]he location of each alleged use"; and "the timing of each alleged use"). That makes it different from this case, where CCS speculates about a single individualized issue and no discovery has taken place. In *Martell v. X Corp.*, the court granted a motion to dismiss because the plaintiff did not "allege that the [defendant's

[12] Likewise, Plaintiffs do not allege that "CCS does not maintain [address] information for people who appear in photos taken and uploaded by photographer customers." ECF No. 55 at 28–29.

technology] scanned individuals' face geometry." No. 23-C-5449, 2024 WL 3011353, at *2 (N.D. Ill. June 13, 2024). But Plaintiffs here do make that allegation. *See* ECF No. 50 ¶¶ 5–6, 26–29. And *Sanders v. Apple Inc.* is a non-BIPA case where the plaintiff sought to certify a nationwide class on fraud and warranty claims that required proof of individual reliance; "[c]ourts routinely hold" that such claims "are difficult to maintain on a nationwide basis and rarely are certified." 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009). In contrast, BIPA classes like this one routinely ***are*** certified. *See supra* at 13–14, 18–19.

In short, this is another issue "more appropriately resolved on Plaintiffs' motion for class certification, after they have had the benefit of complete discovery." *Harwood*, 2026 WL 1078685, at *3. If the Court determines there is an "identifiability" requirement, it can also decide—after discovery—whether it is a common issue for the entire class, or only for a subset of the class, or whether the issue is both individualized *and* predominant over all common issues. But those questions cannot be resolved now.

**d. CCS Does Not Show Conclusively that Class Treatment Is Inferior.**

CCS closes with a meager argument that class treatment is not superior because "Plaintiffs seek to represent a class of unidentifiable people." ECF No. 55 at 30. This merely assumes the correctness of CCS's prior arguments. But as discussed, those arguments are speculative and insufficient. Moreover, "[a]t heart," the superiority analysis is comparative—it asks "whether individual lawsuits or classwide litigation is the superior method of adjudication." *Gulick v. State Farm Mut. Auto. Ins. Co.*, 780 F. Supp. 3d 1169, 1202, 1203 (D. Kan. 2025). CCS does not engage in this comparative analysis and thus falls short of establishing that class treatment is inferior.

## CONCLUSION

CCS's motion to dismiss or to strike should be denied.

Dated: November 25, 2026

Respectfully submitted,

/s/ Matthew J. Limoli

Matthew J. Limoli (admitted *pro hac vice*)
**THE DRISCOLL FIRM, P.C.**
434 Fayetteville Street, Ste. 560
Raleigh, North Carolina 27601
Telephone: (919) 582-6516
Facsimile: (314) 932-3233
matthew@thedriscollfirm.com

**THE DRISCOLL FIRM, LLC**
John J. Driscoll (admitted *pro hac vice*)
1311 Avenida Juan Ponce de Leon, Ste. 501
San Juan, Puerto Rico 00907
Telephone: (314) 222-2605
Facsimile: (314) 932-3233
john@jjlegal.com

**THE TAWWATER LAW FIRM, P.L.L.C.**
Larry A. Tawwater, OBA No. 8852
Darren M. Tawwater, OBA No. 18854
B. Adam Myers, OBA No. 33985
14001 Quail Springs Parkway
Oklahoma City, Oklahoma 73134
Telephone: (405) 607-1400
Facsimile: (405) 607-1450
lat@tawlaw.com
dtaw@tawlaw.com
adam@tawlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 25, 2026, the foregoing document was electronically filed with the Clerk of Court and will be served by operation of the Court's CM/ECF system upon all registered parties.

/s/ Matthew J. Limoli
*Attorney for Plaintiffs*